HERRICK, FEINSTEIN LLP
Stephen B. Selbst
George V. Utlik
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
gutlik@herrick.com

*Counsel for Apex Executive Jet Center Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| All In Jets, LLC d/b/a JetReady, | Case No. 20-11831 (MEW) |
| Debtor. | |

**NOTICE OF MOTION OF APEX EXECUTIVE JET CENTER INC.**
**FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC**
**STAY UNDER SECTION 362(d) OF THE BANKRUTPCY CODE**

**PLEASE TAKE NOTICE** that a hearing will be held on **October 14, 2020 at 10:00 a.m.** or as soon thereafter as counsel may be heard, before the Honorable Michael E. Wiles, United States Bankruptcy Judge at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408 (the "Bankruptcy Court") to consider the Motion of Apex Executive Jet Center Inc. for entry of an order granting relief from the automatic stay under 11 U.S.C. § 362(d) (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be in writing, must conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), must

set forth the name of the objecting party, must state with particularity the basis for the objection and the specific grounds therefor, and must be filed with the Clerk of the Bankruptcy Court (with a courtesy copy delivered to Judge Wiles' Chambers) and served upon: (i) counsel for Apex Executive Jet Center Inc., Stephen B. Selbst, Esq. and George V. Utlik, Esq. of Herrick, Feinstein LLP, 2 Park Avenue, New York New York 10016 and by email at sselbst@herrick.com and gutlik@herrick.com; (ii) the Debtor's counsel, Jennifer Elizabeth Cranston, Esq. of Ciardi Ciardi & Astin, 2005 Market Street, Ste. 3500, Philadelphia, PA 19103 and by email at jcranston@ciardilaw.com; (iii) Shannon Anne Scott, Esq., the United States Trustee for Region 2, U.S. Department of Justice, Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 and by email at shannon.scott2@usdoj.gov; (iii) the Trustee, Yann Geron, Esq. of Reitler Kailas & Rosenblatt LLC, 885 Third Avenue, 20th Floor, New York, New York 10022 and by email at YGeron@reitlerlaw.com; and (iv) the aircraft owners: SMB G-IV VI LLC, 2104 Lakehaven Point, Longwood, FL 32779; SMB G-IV I LLC, 2104 Lakehaven Point, Longwood, FL 32779; SMB Challenger I LLC, 2104 Lakehaven Point, Longwood, FL 32779; and One World Aviation 299 LLC, 8 The Grn, Suite A, Dover, DE 19901, so as to be filed and actually received no later than **October 7, 2020 at 4:00 p.m**.

HF 13483194v.1

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Motion is timely filed, served and received in accordance with this Notice, the Bankruptcy Court may grant the relief requested in the Motion without further notice.

Dated: September 18, 2020
      New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: /s/   *Stephen B. Selbst*
Stephen B. Selbst
George V. Utlik
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
gutlik@herrick.com

*Counsel for Apex Executive Jet Center Inc.*

HF 13483194v.1

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
George V. Utlik
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
gutlik@herrick.com

*Attorneys for Apex Executive Jet Center, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| All In Jets, LLC d/b/a JetReady, | Case No. 20-11831 (MEW) |
| Debtor. | |

**MOTION OF APEX EXECUTIVE JET CENTER INC.**
**FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC**
**STAY UNDER SECTION 362(d) OF THE BANKRUTPCY CODE**

Apex Executive Jet Center, Inc. ("Apex"), by its counsel, Herrick, Feinstein LLP, respectfully files this motion (the "Motion") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), granting relief from the automatic stay under 11 U.S.C. § 362(d)[1] to permit Apex to exercise its lien rights with respect to five aircraft (collectively, the "Aircraft") where All In Jets, LLC d/b/a JetReady ("JetReady" or the "Debtor") is the lessee of the Aircraft under "dry leases."  In support of the Motion, Apex has filed the Declaration of Stephen B. Selbst ("Selbst Declaration") annexed hereto as **Exhibit B** and respectfully represents as follows:

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

1

## PRELIMINARY STATEMENT

1.      Apex operates an aviation hangar, storage and maintenance facility and related offices at Florida's Melbourne-Orlando International Airport. Apex provided hangar and office space, maintenance and fuel services to JetReady. For various periods, Jet Ready stored, serviced, and maintained the Aircraft at Apex's facility. Before the Petition Date (as hereinafter defined), JetReady failed to pay Apex for goods and services it obtained pursuant to its agreement with Apex. As of the Petition Date Jet Ready owed Apex not less than $238,127.56. Based on Jet Ready's material breaches of the agreement, prior to the Petition Date, Apex filed and perfected five liens on the Aircraft under Florida and federal law. As set forth herein, Apex seeks relief from the automatic stay to permit it to exercise its remedies as a lienholder under Florida law.

2.      According to the affidavit of Seth Bernstein filed pursuant to Local Rule 1007-2, "The Debtor is a private jet charter operator and aircraft management company". [ECF #7 at ¶ 5.] However, the Debtor does not own any aircraft, including the Aircraft, and "[t]he Debtor's primary asset is its Part 135 certificate" issued by the Federal Aviation Administration (the "FAA"). *Id.* at ¶ 5. "The Debtor is unable to continue to operate" and seeks to sell its Part 135 Certificate. *Id.* at ¶ 7. On information and belief, all of the Aircraft are owned by affiliates of Seth Bernstein, the sole member of the Debtor. Thus, the Debtor has no continuing need for, or interest in, the Aircraft that are the subject of this Motion.

3.      In light of the Debtor's continuing defaults, its failure to provide adequate protection to Apex with respect to the Aircraft, and its admitted inability to provide adequate assurance of future payments to Apex, the Motion should be granted by the Court under 11 U.S.C. § 362(d)(1) or § 362(d)(2), allowing Apex to protect and enforce its lien rights by selling or disposing of the Aircraft.

HF 13482219v.7

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the Southern District of New York (the

"Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper

in this district under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §

157(b).

5.      The statutory predicate for the relief requested herein are sections 105(a) and 362(d)

of the Bankruptcy Code, Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedures

(the "Bankruptcy Rules"); and Rules 4001-1 and 9014-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules").

## BACKGROUND

**JetReady's Bankruptcy Filing**

6.      On August 9, 2020 (the "Petition Date"), the Debtor commenced this case (the

"Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy

Code in this Court.

7.      The Debtor asserted that it is a small business debtor under section 101(51D) of the

Bankruptcy Code. The Debtor remains in possession of its property and continues to manage its

business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

8.      Yann Geron, Esq. of Reitler Kailas & Rosenblatt LLC was appointed as the

Subchapter V trustee (the "Trustee") in this Chapter 11 Case [ECF No. 4].

9.      The Debtor's primary asset is its Part 135 certificate provided by the FAA (the

"FAA License").  Additional background about the Debtor is set forth in *Affidavit of Seth Bernstein*

*Pursuant to Local Bankruptcy Rule 1007-2* [ECF No. 7] ("Bernstein Affidavit").  At the 341

meeting of creditors on August 31, 2020, Seth Bernstein, the Debtor's owner, testified that

3

Workers Compensation is the only current insurance and that the Debtor does not own and currently does not operate the Aircraft.

**Prepetition Transactions and Apex's Liens on the Five Aircraft**

10.     Apex operates an aviation hangar, storage and maintenance facility and related offices at Florida's Melbourne-Orlando International Airport.

11.     As noted above, the Debtor operated the Aircraft under leases from their respective owners and leased them to charter operators under "dry leases," meaning that the charter operators, and not the Debtor, was responsible for the pilot, crew, ground staff and operating expenses. In effect, the Debtor was a middleman between the owners of the Aircraft and the charter operators.

12.     Under a Master Lease Agreement dated January 16, 2008, as amended, and a Use and Occupancy Agreement effective as of February 1, 2019 (the "Agreement"), Apex agreed to provide hangar and office space, maintenance and fuel services to JetReady for two years. Schedule 2 of the Agreement sets forth JetReady's obligations to maintain certain insurance coverage, including Commercial General Liability, Aircraft Liability and Physical Damage, Property Insurance, Worker's Compensation, and Automobile Liability Insurance. The Agreement, among other things, contains a broad indemnification provision, indemnifying Apex for all damages, claims, actions, and attorney's fees arising out of JetReady's failure to perform under the Agreement.

13.     For various periods, Jet Ready stored, serviced, and maintained the Aircraft at Apex's facility. On information and belief, all of the Aircraft are owned by affiliates of Seth Bernstein, the sole member of the Debtor. Before the Petition Date, JetReady breached the Agreement by failing to pay various amounts due thereunder, including amounts owed for hangar and office usage, as well as fuel charges for the Aircraft. After Jet Ready's defaults, Apex asserted

4

its common law and statutory lien rights under Chapters 83 and 329 of the Florida Statutes, and filed and perfected five liens on the five Aircraft under Florida and federal law, as further set forth below and in the attached Selbst Declaration.

14.　　On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $47,452.31 owed by Jet Ready for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1056, registered with the FAA as N685MF (the "N685MF Aircraft"). The N685MF Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on July 8, 2020. As of Petition Date, the total outstanding debt is estimated at $47,452.31.

15.　　On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $45,005.07 for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1341, registered with the FAA as N298RB (the "N298RB Aircraft"). The N298RB Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on July 17, 2020. As of Petition Date, the total outstanding debt is estimated at $45,005.07.

16.　　On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $45,005.07 for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's

5

serial number 1322, registered with the FAA as N272TX (the "N272TX Aircraft"). The N272TX Aircraft is owned by SMB G-IV I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on June 11, 2020. As of Petition Date, the total outstanding debt is estimated at $45,005.07.

17. On June 16, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $7,848.45 for (1) labor, hangar storage, and other services provided between February 1, 2019 and May 17, 2020 in Brevard Country, Florida, and (2) fuel for that certain CANADAIR LTD model CL-600-2B16 aircraft, manufacturer's serial number 5015, registered with the FAA as N204JK (the "N204JK Aircraft"). The N204JK Aircraft is owned by SMB Challenger I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on August 1, 2020. The N204JK Aircraft was parked on Apex ramp and continues to remain there on a month-to-month basis. The N204JK Aircraft is not operational because the engines and other components were removed. The N204JK Aircraft was purchased solely for the engines and was intended to be scrapped. As the Petition Date, the total outstanding debt is estimated at $13,699.58.

18. On June 16, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $52,478.18 for (1) labor, hangar storage, and other services provided between February 1, 2019 and May 17, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1231, registered with the FAA as N299MB (the "N299MB Aircraft"). The N299MB Aircraft is owned by One World Aviation 299 LLC, which has offices at 8 The Grn, Suite A, Dover, DE 19901. The lien was recorded in Oklahoma (FAA) on July 14, 2020. The N299MB Aircraft was parked in Apex's hangar and continues to occupy the hangar space. The N299MB

6

Aircraft is not operational because it has many parts removed. As of Petition Date, the total outstanding debt is estimated at $86,965.53.

## BASIS FOR RELIEF

19. Apex requests relief from the automatic stay pursuant to sections 105(a) and 362(d)(1) and (d)(2) of the Bankruptcy Code to allow Apex to exercise its lienholder remedies with respect to the five Aircraft.

20. Apex is entitled to relief from the automatic stay under section 362(d) of the Bankruptcy Code, which provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization[.]

*See* 11 U.S.C. § 362(d). *See also In re Touloumis*, 170 B.R. 825, 827 (Bankr. S.D.N.Y. 1994) ("The subsections of Section 362(d) are disjunctive, and the movant need satisfy only one of the two to obtain relief." (citations omitted)).

**Apex is Entitled to Relief from the Automatic Stay**
**for Cause under Section 362(d)(2) of the Bankruptcy Code**

21. Apex is entitled to relief from the automatic stay for cause under section 362(d)(1) of the Bankruptcy Code. The Bankruptcy Code does not define the term "cause" and, therefore, bankruptcy courts must determine what constitutes "cause" to lift the automatic stay on a case by case basis. *See Sonnax Indus., Inc. v. Tri Component Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (finding that "[n]either the statute nor the legislative history defines the

HF 13482219v.7

term 'for cause'"); *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (Bankr. S.D.N.Y. 1993).

22.     In deciding whether there is cause to lift the automatic stay, the Court should consider the impact of the stay on the parties and the balance of the harms as a result of terminating or continuing the stay. *See Sonnax*, 907 F.2d at 1286; *In re Burger Boys, Inc.*, 183 B.R. 682, 687–88 (S.D.N.Y. 1994); *Manhattan King David Restaurant*, 163 B.R. at 40 ("The decision of whether to lift the stay is committed to the sound discretion of the bankruptcy judge . . . .").

23.     "The burden of proof on a motion to lift or modify the automatic stay is a shifting one." *Sonnax*, 907 F.2d at 1285. Section 362(d)(1) initially puts the burden of proof on the movant to show "cause" for relief. Once a prima facie case is established, the debtor bears the ultimate burden of showing that cause does not exist to lift the stay. *See id.* ("Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in the property'"); *Burger Boys*, 183 B.R. at 687 ("Section 362(d)(1) requires an initial showing of 'cause' by the movant. Once the movant establishes 'cause,' the burden of proof shifts to the debtor."); *In re Touloumis*, 170 B.R. 825, 827–28 (Bankr. S.D.N.Y. 1994).

24.     Under the plain language of section 362(d)(1), the Debtor's failure and its inability to provide any form of adequate protection to Apex is sufficient cause to modify or terminate the automatic stay. *See In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001) (noting that "[t]he failure to provide adequate protection when the property is declining in value is a classic basis for granting relief from the stay for cause.").

25.     Not only the Debtor has not paid Apex, but the continuing presence of two of the Aircraft at Apex's facility prevents Apex from leasing the space to another tenant who will pay for

8

the use of the hangar, maintenance, and fuel services. Each day that passes without a payment, the possibility that Apex may be fully compensated decreases. Moreover, the Debtor's failure to obtain insurance to protect the Aircraft, as required under the Agreement, poses additional risk to Apex. Indeed, each day that the Aircraft is left uninsured, the risk of loss increases the possibility that Apex may never obtain a recovery.

26.     In this case, the balancing of the harms demonstrates that, in addition to non-payment of its claims, Apex faces continuing risk to its business from the presence of the uninsured Aircraft, which the Debtor has acknowledged it will not be operating and will not be part of the sale of its assets. Thus, granting the Motion imposes no harms on JetReady. That analysis, coupled with JetReady's inability to provide adequate protection, is sufficient cause to lift the automatic stay allowing Apex to exercise its rights and remedies with respect to the Aircraft.

**Apex is Entitled to Relief from the Automatic Stay**
**under Section 362(d)(2) of the Bankruptcy Code Because the Debtor**
**Has No Equity and Does Not Need the Aircraft for an Effective Reorganization**

27.     Alternatively, Apex is entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code because the Debtor does not own the Aircraft and, by definition, has no equity in the Aircraft. Further, the Debtor does not seek to operate or use the Aircraft to reorganize, but seeks to liquidate the FAA License, the only asset in this Chapter 11 Case. *See* Bernstein Affidavit at ¶ 6-7 ("The Debtor's primary asset is its Part 135 certificate . . . worth $625,000. . . .  The Debtor is unable to continue to operate with the large overhang of debt. . . . The Debtor has reached an arrangement to . . . sell itself which will generate $625,000 . . . .").

28.     Apex is entitled to relief from the automatic stay because the Aircraft is not "necessary to an effective reorganization." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 375 (1998). The

HF 13482219v.7

Aircraft are not necessary for an effective reorganization because the Debtor has admitted that it does not intend to operate the Aircraft. Indeed, the Debtor seeks to liquidate, rather than to reorganize, in this Chapter 11 Case. In *In re Diplomat Electronics Corp.*, 82 B.R. 688 (Bankr. S.D.N.Y. 1988), Judge Brozman noted that even at the outset of a bankruptcy case, the Supreme Court in *Timbers* recognized that "lack of a realistic prospect of effective reorganization requires relief from the automatic stay." *In re Diplomat Electronics Corp.*, 82 B.R. at 693 (citation omitted).

29.     In short, the Aircraft are not necessary to the Debtor's reorganization. Facing defaults with numerous creditors, the Debtor has no means to make any adequate protection payments and has no realistic way of curing arrears or compensating Apex going forward. There is no reason to require Apex to continue to incur additional losses when it has valid state law lien remedies it could exercise. Therefore, under the circumstances, the Court should grant the Motion under sections 362(d)(1) or 362(d)(2) of the Bankruptcy Code so that Apex may pursue its rights and remedies with respect to the Aircraft.

## RESERVATION OF RIGHTS

30.     Apex expressly reserves its rights to further address the Motion and any other ancillary issue and to respond to any party, either by further submission to this Court, at oral argument or testimony to be presented at any hearing.

## NOTICE OF HEARING

31.     Notice of this Motion has been provided to: (i) the Debtor's counsel, Jennifer Elizabeth Cranston, Esq. of Ciardi Ciardi & Astin, 2005 Market Street, Ste. 3500, Philadelphia, PA 19103 and by email at jcranston@ciardilaw.com; (ii) Shannon Anne Scott, Esq., the United States Trustee for Region 2, U.S. Department of Justice, Office of the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014 and by email at shannon.scott2@usdoj.gov; (iii) the Trustee, Yann Geron, Esq. of Reitler Kailas & Rosenblatt

LLC, 885 Third Avenue, 20th Floor, New York, New York 10022 and by email at YGeron@reitlerlaw.com; (iv) the aircraft owners: SMB G-IV VI LLC, 2104 Lakehaven Point, Longwood, FL 32779; SMB G-IV I LLC, 2104 Lakehaven Point, Longwood, FL 32779; SMB Challenger I LLC, 2104 Lakehaven Point, Longwood, FL 32779; and One World Aviation 299 LLC, 8 The Grn, Suite A, Dover, DE 19901; and (v) those persons who have formally appeared and requested notice and service in this Chapter 11 Case under Bankruptcy Rules 2002 and 3017. Apex respectfully submits that no other or further notice of the Motion is required or need be provided. No previous request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, Apex respectfully requests that the Court enter the Proposed Order and grant such further relief as this Court deems proper under the circumstances.

Dated: September 18, 2020  
      New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: /s/   *Stephen B. Selbst*  
Stephen B. Selbst  
George V. Utlik  
2 Park Avenue  
New York, New York 10016  
(212) 592-1400  
(212) 592-1500 (fax)  
sselbst@herrick.com  
gutlik@herrick.com

*Attorneys for Apex Executive Jet Center, Inc.*

11

**<u>Exhibit A</u>**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| All In Jets, LLC d/b/a JetReady, | Case No. 20-11831 (MEW) |
| Debtor. | |

## ORDER APPROVING MOTION OF APEX EXECUTIVE JET CENTER INC. FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362(d) OF THE BANKRUTPCY CODE

This matter coming before the Court on the motion (the "Motion")[1] of Apex Executive Jet

Center, Inc. ("Apex"), for entry of an order granting relief from the automatic stay under 11 U.S.C.

§ 362(d) to permit Apex to protect and enforce its rights and remedies with respect to its validly

perfected liens on and claims against the five aircraft (the "Aircraft") identified in Selbst

Declaration, which is annexed as Exhibit B to the Motion; and this Court having jurisdiction over

this matter under 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core

proceeding under 28 U.S.C. § 157(b)(2); and this Court having found that venue of the Motion in

this district is proper under 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief

requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties

in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for

a hearing on the Motion were appropriate and no other notice need be provided; and this Court

having reviewed the Motion and having heard the statements in support of the relief requested

therein at a hearing before this Court (the "Hearing"); and this Court having determined that the

legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      The automatic stay provided for under section 362(a) of the Bankruptcy Code is hereby vacated. Apex is authorized to exercise its remedies as a lienholder under Florida and federal law with respect to the Aircraft.

3.      The Debtor shall identify the location of the three of the Aircraft that are not in Apex's possession and make each of the Aircraft available for pick up by Apex within three (3) business days of the date of entry of this Order.

4.      Nothing contained herein shall constitute a waiver or limitation of Apex's rights to seek any other relief in this Court.

5.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed after the entry hereof and shall be effective and enforceable immediately upon its entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply, and the Debtor, or any other party in interest, objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law, or risk its appeal will be foreclosed as moot.

6.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: New York, New York
            October __, 2020

_____
THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE

2

**Exhibit B**

**Selbst Declaration**

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
George V. Utlik
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
gutlik@herrick.com

*Attorneys for Apex Executive Jet Center, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| All In Jets, LLC d/b/a JetReady, | Case No. 20-11831 (MEW) |
| Debtor. | |

**DECLARATION OF STEPHEN B. SELBST IN SUPPORT**
**OF THE MOTION OF APEX EXECUTIVE JET CENTER INC.**
**FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC**
**STAY UNDER SECTION 362(d) OF THE BANKRUTPCY CODE**

I, Stephen B. Selbst, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a member of the firm of Herrick, Feinstein, LLP ("Herrick"), which maintains offices for the practice of law at, among other places, 2 Park Avenue, New York, NY 10016.  I am an attorney at law, admitted in, practicing in, and a member in good standing of, among others, the bars of the State of New York, the Eastern District of New York, and the Southern District of New York.

2.     I submit this declaration in support of the motion (the "<u>Motion</u>")[1] of Apex Executive Jet Center Inc. ("<u>Apex</u>") for entry of the Proposed Order granting relief from the automatic stay under 11 U.S.C. § 362(d) to permit Apex to exercise its lien rights with respect to the Aircraft.

3.     Apex operates an aviation hangar, storage and maintenance facility and related offices at Florida's Melbourne-Orlando International Airport.

4.     Under a Master Lease Agreement dated January 16, 2008, as amended, and a Use and Occupancy Agreement effective as of February 1, 2019 (the "<u>Agreement</u>"), annexed hereto as **<u>Exhibit 1</u>**, Apex agreed to provide hangar and office space, maintenance and fuel services to JetReady for two years.  Schedule 2 of the Agreement sets forth JetReady's obligations to maintain certain insurance coverage, including Commercial General Liability, Aircraft Liability and Physical Damage, Property Insurance, Worker's Compensation, and Automobile Liability Insurance. The Agreement, among other things, contains a broad indemnification provision, indemnifying Apex for all damages, claims, actions, and attorney's fees arising out of JetReady's failure to perform under the Agreement.

5.     For various periods, Jet Ready stored, serviced, and maintained  the Aircraft at Apex's facility.  On information and belief, all of the Aircraft are owned by affiliates of Seth Bernstein, the sole member of the Debtor.  Before the Petition Date, JetReady breached the Agreement by failing to pay various amounts due thereunder, including amounts owed for hangar and office usage, as well as fuel charges for the Aircraft.  After Jet Ready's defaults, Apex asserted its common law and statutory lien rights under Chapters 83 and 329 of the Florida Statutes, and

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

filed and perfected five liens on the five Aircraft under Florida and federal law, as further set forth in the Claims of Liens annexed hereto as **Exhibit 2**.

6.      On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $47,452.31 owed by Jet Ready for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1056, registered with the FAA as N685MF (the "N685MF Aircraft").  The N685MF Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on July 8, 2020. As of Petition Date (defined below), the total outstanding debt is estimated at $47,452.31.

7.      On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $45,005.07 for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1341, registered with the FAA as N298RB (the "N298RB Aircraft").  The N298RB Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779. The lien was recorded in Oklahoma (FAA) on July 17, 2020. As of Petition Date, the total outstanding debt is estimated at $45,005.07.

8.      On May 28, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $45,005.07 for (1) labor, hangar storage, and other services provided between February 1, 2019 and March 1, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1322, registered with the FAA as N272TX (the "N272TX Aircraft").  The N272TX

3

Aircraft is owned by SMB G-IV I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779.  The lien was recorded in Oklahoma (FAA) on June 11, 2020.  As of Petition Date, the total outstanding debt is estimated at $45,005.07.

9.     On June 16, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $7,848.45 for (1) labor, hangar storage, and other services provided between February 1, 2019 and May 17, 2020 in Brevard Country, Florida, and (2) fuel for that certain CANADAIR LTD model CL-600-2B16 aircraft, manufacturer's serial number 5015, registered with the FAA as N204JK (the "N204JK Aircraft"). The N204JK Aircraft is owned by SMB Challenger I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779.  The lien was recorded in Oklahoma (FAA) on August 1, 2020.  The N204JK Aircraft was parked on Apex ramp and continues to remain there on a month-to-month basis.  The N204JK Aircraft is not operational because the engines and other components were removed.  The N204JK Aircraft was purchased solely for the engines and was intended to be scrapped.  As of the Petition Date, the total outstanding debt is estimated at $13,699.58.

10.    On June 16, 2020, Apex asserted a Claim of Lien, under Sections 329.41 and 713.58 of the Florida Statutes, on account of an unpaid balance of $52,478.18 for (1) labor, hangar storage, and other services provided between February 1, 2019 and May 17, 2020 in Brevard Country, Florida, and (2) fuel for that certain Gulfstream Aerospace model G-IV aircraft, manufacturer's serial number 1231, registered with the FAA as N299MB (the "N299MB Aircraft").  The N299MB Aircraft is owned by One World Aviation 299 LLC, which has offices at 8 The Grn, Suite A, Dover, DE 19901.  The lien was recorded in Oklahoma (FAA) on July 14, 2020.  The N299MB Aircraft was parked in Apex's hangar and continues to occupy the hangar space.  The N299MB

4

Aircraft is not operational because it has many parts removed. As of Petition Date, the total outstanding debt is estimated at $86,965.53.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: September 18, 2020
New York, New York

*/s/ Stephen B. Selbst*
Stephen B. Selbst

# EXHIBIT 1

# USE AND OCCUPANCY AGREEMENT
## HANGAR SPACE
## SUMMARY OF TERMS

| | |
|---|---|
| Airport | MLB – Orlando-Melbourne International Airport |
| Operator | Apex Executive Jet Center |
| Master Lease Agreement(s) | Dated January 16, 2008 and amended thereafter. |
| Facility | Hangar 1 |
| User | JetReady<br>2881 East Oakland Park Blvd.<br>Fort Lauderdale, FL 33306 |
| Aircraft | Various |
| Description of Space | Offices, storage and hangar |
| Purpose(s) for Use of Space | Operation of charter and maintenance department |
| Effective Date | February 1, 2019 |
| Initial Term | Two (2) years |

| Use Fees, Other Fees and Charges | | Sq Ft | Rate/SF | Annual Rent | Monthly Rent |
|---|---|---|---|---|---|
| | Office | 776 | $30.00 | $23,280.00 | $1,940.00 |
| | Storage | 100 | $20.00 | $2,000.00 | $166.67 |
| | | Sq Ft | Rate/SF | Annual Rent | Monthly Rent |
| | Hangar: GLF4 | 6,874 | $10.25 | $70,458.50 | $5,871.54 |
| | Credit Card Information on File: Y | | | | |

| Security Deposit | $7,978.21 (representing one month's Space Use Fees) |
|---|---|

IN WITNESS WHEREOF, the parties have executed this Summary of Terms and the attached Use and Occupancy Agreement including all Schedules and Exhibits as of the Effective Date, and the person executing this Summary of Terms on behalf of User represents and warrants that he or she has full power and authority to do so. This agreement supersedes any prior agreement(s) signed by the Parties.

**OPERATOR**

By: _____

Title: President

Date: Feb 22. 2019

**USER**

By: _____

Title: Director of Maintenance

Date: 22 FEB 2019

# USE AND OCCUPANCY AGREEMENT

This USE AND OCCUPANCY AGREEMENT ("Agreement") is entered into as of the Effective Date by and between Operator and User. Capitalized terms used herein without definition shall have the meaning ascribed to such terms in the Summary of Terms to which this Agreement is attached.

## 1. Use of Space and Provision of Fuel Services.

1.1    Operator grants User the right to use and occupy the Space and the right to use the apron and access facilities described in the Summary of Terms. The Space shall be used by User only for the purpose(s) set forth in the Summary of Terms. User shall notify Operator promptly if User expects to replace the Aircraft (either on a temporary or permanent basis) with a substitute aircraft, and all provisions of this Agreement applicable to the Aircraft shall apply to any such substitute aircraft of the same type). Operator shall provide such fuel services at the Airport as User shall request. This Agreement does not grant User the right to conduct, and User shall not conduct, any business at Operator's facility unless User has obtained all required permits, authorizations and approvals for conducting such business.

1.2    User shall comply with all applicable statutes, ordinances, rules, regulations, orders and requirements, now in force or which may hereafter be in force, regulating the use, occupancy or alterations by User of the Space, and the rules and regulations set forth on Schedule 1 to this Agreement, if any, specifying additional terms, conditions and obligations of User as they relate to the Master Lease Agreement. User shall not cause or permit the Space to be used in any way (i) which constitutes (or would constitute) a violation of any law, ordinance, or governmental regulation or order, (ii) which unreasonably interferes with the rights of tenants or users of the Space, or (iii) which constitutes a nuisance or waste. User's rights granted herein are subject and subordinate to the terms and conditions of the Master Lease Agreement. Nothing in this Agreement shall create or purport to create any obligations of the Airport to User, and the Airport shall be deemed an intended third party beneficiary of this Agreement.

1.3    User shall keep and maintain the Space and every part thereof in good and clean condition and in accordance with reasonable rules or regulations established by Operator or the Airport from time to time during the Term. This provision is not intended to impose an obligation on User to repair the Space unless such repair is necessitated by the fault or neglect of User. User shall not make any alterations or additions to the Space without first obtaining Operator's written permission and shall return occupancy at the termination of this Agreement in the same and in as good condition as exists on the Effective Date, except for reasonable wear and tear,

damage by fire or casualty through no fault of User, and modifications expressly approved by Operator.

1.4    User shall provide reasonable advance notice to Operator of anticipated Aircraft flight activity. Operator shall maintain sufficient personnel and equipment to provide for the movement of the Aircraft as reasonably requested by User. Operator shall be solely responsible for the towing or repositioning of all Aircraft into and out of the Space. User expressly agrees not to undertake the towing or repositioning of the Aircraft. User shall be solely responsible for the securing of the Aircraft while positioned in the Space. Consistent with the foregoing obligation, User shall ensure the Aircraft is secured in such a manner that enables Operator to tow or reposition the Aircraft at any time for purposes of ingress and egress to the any portion of Operator's facility.

1.5    Operator reserves the right to use the Space during those times when the Aircraft is away from the Airport and to enter the Space at all reasonable times for the purpose of making any inspection it may deem appropriate to the proper enforcement of any of the covenants and conditions of this Agreement or the Master Lease Agreement or to undertake repairs, additions or alterations to the Space.

1.6    User may perform Aircraft maintenance, Aircraft cleaning, and other support-related services on the Aircraft exclusively through User's employees or through contracted third parties that, in Operator's opinion, have adequate insurance coverage, provided, however, that aircraft towing and fueling shall be performed exclusively by Operator or its designated agent(s). Upon the request of Operator, User shall cause any such third parties to execute a hold harmless and indemnification agreement in form and substance reasonably satisfactory to Operator and provide evidence to Operator of the insurance coverage maintained by any such third parties.

1.7    User acknowledges that there is limited space in Operator's hangar(s) at the Airport, and that as consideration for the grant of rights pursuant to this Agreement, this Agreement is expressly conditioned on User's agreement to purchase its requirement for aviation fuel from Operator. The foregoing obligation applies only with respect to the Aircraft which is/are the subject of this Agreement and only with respect to the User's requirements for aviation fuel for said Aircraft while at the Airport. In the event User

2

breaches its obligation to purchase its requirement for aviation fuel from Operator, this Agreement, may, at the option of Operator, be terminated forthwith. This Agreement creates only a license terminable as set forth herein. Nothing in this Agreement shall be construed or deemed to construe a grant of an interest in real property or to convey an estate or to vest property rights in User, nor shall this Agreement or its performance be interpreted to create a landlord/tenant, partnership, agency, joint venture, bailment, trust or fiduciary relationship between Operator and User.

1.8 <u>Height Restrictions</u>. (A) User expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions on the Property to such a height so as to comply with Federal Aviation Regulations, Part 77. (B) User expressly agrees for itself, its successors and assigns, to prevent any use of the Property by, through or under User which would interfere with or adversely affect the operation or maintenance of the airport, or otherwise constitute an airport hazard. Authority covenants and acknowledges that the use of the Property as proposed by User does not interfere with or adversely affect the operation or maintenance of the airport or otherwise constitute an airport hazard. (C) The User is on notice that the Airport (Orlando-Melbourne International Airport) reserves unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the Property, together with the right to cause in such airspace such noise as may be permitted by law and inherent in the operation of aircraft, now known or hereafter used, for navigation of or flight in the airspace, and for use of said airspace for landing on, taking off from, or the operation of, the airport.

## 2. <u>Use Fees</u>.

2.1 User shall pay to Operator the monthly fees set forth in the Summary of Terms ("Use Fees") as follows: Space Use Fees are payable, in advance, on the first day of each month during the Term in consideration of User's use and occupancy of the Space and for the provision of other services, as applicable, for the Term; Fuel Charges shall be immediately payable by User by credit card, at the time such services are provided by Operator. Space Use Fees shall be prorated on a daily rate basis for any partial month during the Term. Upon execution of this Agreement, User shall pay and maintain with Operator a Security Deposit in the amount set forth in the Summary of Terms, representing one (1) month's Space Use Fees. The Security Deposit shall be held by Operator to guarantee the full and faithful

performance of User's payment obligations under this Agreement and may be applied by Operator without notice to User against any obligation of User due hereunder that is not paid when due. In the event Operator draws down on such Security Deposit, User shall promptly replenish the Security Deposit to the original amount. Upon termination or expiration of this Agreement, the Security Deposit shall be returned to User less any outstanding obligations to Operator at the time of the termination or expiration of this Agreement.

2.2 Commencing with the Effective Date and thereafter during the Term(s), User shall pay Operator User Fees for office, shop and hangar space, as described in the Summary of Terms. Fees for hangar space shall be determined based on User's fuel usage at MLB, adjusted semi-annually (typically January and July of each year), according to the Fuel Usage Chart in Exhibit B. Effective January 1, 2020, Space Use Fees shall be adjusted annually, typically January 1st of each year, to reflect changes in the Consumer Price Index ("CPI"), All Urban Consumers, United States City Average based on the change in index for All Items during the 12-month period ending one month prior to January 1st of each year. The Space Use Fees outlined on the Summary of Terms are based on 2018 rates and are subject to increase.

2.3 In addition to the Space Use Fees and Fuel Charges, User shall pay Operator all applicable Airport use fees, facility fees, fuel flowage fees, and other fees imposed by the governing body of the Airport imposed or assessed on the provision of aircraft stoage, fuel, or other services rendered by Operator hereunder, together with any sales, use, excise, or other taxes imposed by any governmental jurisdiction by virtue of said services. User shall also be be liable for all taxes, fees and other charges assessed or imposed on or by User's operations or businesses at the Airport. Under no circumstances shall Operator by liable for or required to pay any tax, fee, or other charge owed by User, including any taxes, fees or charges applicable to User or any of User's businesses owed to the Airport.

2.4 User shall only be obligated to pay separately for telephone, Internet and janitorial services if so indicated on the Summary of Terms.

2.5 If User fails to pay in full any User Fees or other amounts provided for in this Agreement within five (5) days after the same becomes due and payable, Operator shall be authorized to submit such charges for payment on User's credit card. User shall be obligated to pay a late charge equal to five percent (5%) of the amount, or any portion thereof, not so paid when due. In addition, any fees or other amounts, or

_KE_ Initials                    _RR_ Initials

any portion thereof, to be paid by User pursuant to this Agreement which are not paid in full within ten (10) days after the same becomes due and payable shall bear interest at a rate equal to two (2) percentage points above the then applicable Wall Street Journal Prime Rate (U.S. money center commercial banks) or its successor, accruing from the date such amount became due and payable to the date of payment thereof by User. Such interest shall constitute additional User Fees due and payable to Operator by User upon the date of payment of the delinquent payment referenced above.

### 3. Term and Termination.

3.1 Provided User has furnished Operator with complete billing and credit information, including any requested credit application information and has placed its credit card information on file with Operator, this Agreement shall commence on the Effective Date and continue for the period of time set forth in the Summary of Terms (the "Initial Term"). After the Initial Term, this Agreement shall continue in effect from year to year, being automatically renewed after each year (each a "Renewal Term"), unless either party gives written notice of termination, with or without cause, to the other party at least sixty (60) days prior to the end of the Initial Term or any Renewal Term thereafter. The Initial Term together with each Renewal Term is referred to as the "Term."

3.2 Operator may terminate this Agreement at any time upon sixty (60) days prior written notice to User.

3.3 User may terminate this Agreement upon fifteen (15) days prior written notice to Operator if User sells the Aircraft or the Aircraft is lost or destroyed, and User does not replace the Aircraft.

3.4 This Agreement will automatically terminate upon the termination or expiration of the Master Lease Agreement for any reason, or as otherwise expressly directed in writing by the Airport, and no damages, monies, or compensation will be owed to User by Operator.

3.5 Each of the following events shall constitute a default under this Agreement on the part of User:

(a) the failure of User to pay and deliver to Operator any payment after same is due and to cure such default within five (5) business days after Operator gives User written notice of such default; provided, that, Operator shall only be obligated to provide such notice and opportunity to cure two (2) times during any consecutive twelve (12) month period;

(b) the failure of User to comply with any other provision of this Agreement as soon as reasonably practical and in any event within five (5) business days after written demand by Operator, except that if any non-monetary failure is not capable of being cured within such five (5) business day period, User shall be given a reasonable time to cure such failure so long as User has timely commenced curing such failure within the five (5) business day period and thereafter diligently proceeds to cure such failure as promptly as possible; and

(c) the filing of any voluntary or involuntary petition or similar pleading under any section or sections of any bankruptcy act by or against User or any voluntary or involuntary proceedings in any court shall be instituted to declare User insolvent or unable to pay User's debts, and in the case of any involuntary petition or proceeding if same is not dismissed within ninety (90) days from the date it is filed, or if User makes an assignment for the benefit of its creditors, or if a receiver is appointed for any property of User or if User's interest hereunder is levied upon execution or its attached by process of law and not discharged or dismissed within ninety (90) days.

3.6 Operator may terminate this Agreement upon written notice to User in the event of any default by User or termination or expiration of the Master Lease Agreement, or as otherwise expressly directed in writing by the Airport. User shall remove all of User's property from the Space and pay to Operator all outstanding Use Fees and other charges due and owing Operator under this Agreement as promptly as practicable after the effective date of termination, but in all cases within five (5) business days of the effective date of termination. If User should fail to vacate the Space within such period, Operator may peaceably enter upon the Space and remove User's property without further notice, demand or court proceeding and without liability to User. Operator shall be under no duty or obligation to store or maintain any of User's property at any time and shall not be liable to User for any damage to or destruction of such property. If Operator stores the property, User shall be liable to Operator for the costs and expenses of transportation and storage.

### 4. No Assignment or Sublicense.
User shall not assign, sublicense, or otherwise transfer this Agreement or its rights or obligations hereunder, in whole or in part without Operator's prior written consent, which consent will not be unreasonably withheld, delayed, or conditioned. Any attempted assignment, sublicense, or other transfer without Operator's prior written consent shall be null and void.

4

$\text{K}\in$ _____ Initials

$\text{Z}\ell$ _____ Initials

**5. Insurance.**

5.1   User agrees that it will maintain at its expense at all times during the Term in full force and effect, with insurers of recognized responsibility, minimum insurance coverage(s) as set forth on Schedule 2 to this Agreement.   All such required insurance, except worker's compensation, shall name Operator, Apex Executive Jet Center, Inc., their respective direct and indirect subsidiaries and affiliated companies under common control with Apex Executive Jet Center, Inc., the Airport, and each of their respective officers, directors, agents, servants, contractors and employees as additional insureds (the "Additional Insureds") and respond on a primary basis.   User and its insurance carrier(s) agree to waive any and all rights of subrogation in favor of the Additional Insureds, except where damage results solely from the negligence or willful misconduct of the Additional Insureds.   Prior to commencing the use or occupancy of the Space, User shall deliver to Operator a certificate evidencing the minimum insurance coverage required hereunder (the "Certificate").   User shall provide Operator with an updated Certificate promptly upon the renewal of any insurance policy described in the Certificate. User acknowledges that its potential liability under this Agreement is not limited to the amount of insurance coverage it maintains or the limits required herein.

5.2   Operator agrees that it will maintain at its expense at all times during the Term in full force and effect, with insurers of recognized responsibility, the minimum insurance coverage(s) required under the Master Lease Agreement.   Upon thirty (30) days written notice by User, Operator will provide User with a certificate of Operator's insurance coverage. Operator is required to respond to a request from User for a copy of such insurance certificate no more than one (1) time per calendar year.

**6. Indemnification Obligations; Limitations on Liability; Environmental.**

6.1   User agrees to indemnify, save and hold harmless Operator, Apex Executive Jet Center, Inc., their direct and indirect subsidiaries and affiliated companies under common control with Apex Executive Jet Center, Inc., the Airport, and each of their respective officers, directors, agents, servants, contractors, invitees and employees to the full extent allowed by law from and against any and all liabilities, demands, suits, claims, actions, arbitrations, administrative proceedings, awards, judgments, losses, fines, penalties, or damages (including, without limitation, attorneys' fees, investigative fees, expert fees, and court costs) for property damage, bodily injury, or death ("Claims") arising out of or in connection with:   (i)   User's performance or nonperformance, including without limitation, breach of any term, condition, covenant, or obligation herein, of this Agreement; (ii) User's use and occupancy of the Space; (iii) User's use of or activities at the Airport or other facilities of the Airport Authority; (iv) any release or spill of hazardous or toxic materials, petroleum, and/or regulated substances; or (v) the acts or omissions of User or its officers, employees, agents, representatives, contractors, subcontractors, sublessees, suppliers, licensees, customers, invitees, and guests or any other person or entity whom User controls or has the right to control or who is acting through or on behalf of User, regardless of where Claims may occur, except to the extent caused solely by the negligence or willful misconduct of Operator.

6.2   Operator covenants and agrees to repair, or cause to be repaired, at Operator's own cost and expense, any damage to the Aircraft to the extent such damage is caused solely by the negligence or willful misconduct of Operator while performing towing, fueling and/or detailing services on or proximate to the Aircraft.   Except as specifically provided herein, Operator shall have no obligation to keep, maintain or secure User's property, and User assumes all risk of loss or damage to its property located in the Space.

6.3   THE PARTIES AGREE THAT UNDER NO CIRCUMSTANCES SHALL THE AIRPORT, OPERATOR, APEX EXECUTIVE JET CENTER, INC., THEIR RESPECTIVE DIRECT AND INDIRECT SUBSIDIARIES AND AFFILIATED COMPANIES UNDER COMMON CONTROL WITH APEX EXECUTIVE JET CENTER, INC., BE LIABLE TO USER FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES (INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF USE, LOST PROFITS OR DIMINUTION IN VALUE) WHETHER IN CONTRACT OR TORT (INCLUDING STRICT LIABILITY AND NEGLIGENCE).

6.4   User agrees not to store or maintain hazardous or toxic materials, petroleum, and/or regulated substances as defined by Local, State, and Federal environmental regulations on or in the Space (with exception of fuel and oil on board the Aircraft, as well as cleaning and other solvents used for aircrafat maintenance, provided that storage of such solvents shall be in containers that meet the specifications, of applicable guidelines and regulations) without prior written authorization from Operator which may be withheld in Operator's reasonable discretion. In the event of a hazardous or toxic spill or release, User shall notify Operator immediately. User shall be responsible

5

_|CE_ Initials                          _PR_ Initials

for proper handling, removal and disposal of all hazardous or toxic materials,petroleum, and/or regulated substances used or stored by User, its employees, agents, independent contractors and invitees, at the Space and/or in other area of the Hangar or contiguous common areas. Storage, handling, removal and disposal of all such hazardous materials and/or regulated substances shall be accomplished by User at its expense in accordance with Local, State, and Federal guidelines and regulations.

6.5 The limitations and liabilities set forth in this Article 6 shall apply to User and the Aircraft at any location that is operated or managed by Operator, Apex Executive Jet Center, Inc., or any of their respective direct and indirect subsidiaries or affiliated companies under common control with Apex Executive Jet Center, Inc.

## 7. Miscellaneous.

7.1 No delay, waiver, omission, or forbearance on the part of Operator to exercise any right or power arising from any breach or default by User under this Agreement will constitute or be deemed a waiver by Operator of any such right or power including, without limitation, the right to declare User in default hereunder for any subsequent breach. To the extent that User enjoys any sovereign or analogous immunity pursuant to any domestic laws, as the same may be amended from time to time (or the benefit of any aspect thereof) with respect to this Agreement or User's obligations hereunder, User hereby irrevocably waives such immunity.

7.2 This Agreement, together with the Summary of Terms and the Schedules hereto, constitutes the entire agreement of the parties hereto and shall not be supplemented, amended or modified except by a written instrument duly executed by the parties hereto.

7.3 Article 6 and the right of Operator to collect User Fees due and owing shall survive and continue in full force in accordance with the terms of this Agreement notwithstanding any expiration or termination of this Agreement or the Master Lease Agreement.

7.4 This Agreement shall be governed by and construed in accordance with the laws of the jurisdiction where the Space is located, without regard to its conflicts of laws rules. In the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of the Master Lease Agreement, the Master Lease Agreement shall govern.

7.5 This Agreement may be executed by facsimile transmission, in one or more counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

7.6 User and Operator hereby voluntarily submit themselves to the jurisdiction of the Federal and State courts situated in the jurisdiction in which the Space is located for the resolution of any dispute arising under this Agreement, and User and Operator expressly waive any defense or claim of inconvenient forum. User shall pay Operator's fees and expenses, including reasonable attorney's fees and court costs, should Operator prevail in any suit or action brought for the collection or payment of any unpaid User Fees or other fees, charges, taxes or expenses due Operator under this Agreement. 7.7 Nondiscrimination.

7.7 Nondiscrimination (A) User for itself, its heirs, personal representatives, successors in interest, and assigns, as a part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land comprising the Property, that in the event Improvements are constructed, maintained, or otherwise operated on the Property for a purpose for which a Authority of Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, User shall maintain and operate such facilities and services in compliance with all other requirements imposed pursuant to Title 49, Code of Federal Regulations, Authority of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-Assisted Programs of the Authority of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said regulations may be amended. (B) User, for itself, its personal representatives, successors in interest, and assigns, as part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land comprising the Property, that (1) no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefit of, or be otherwise subjected to discrimination in the use of said facilities, (2) in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the grounds of race, color, or national origin shall be excluded from participation in, denied the benefit of, or be otherwise subjected to discrimination, and (3) that User shall use the Property in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Authority of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

6

_V E_____ Initials                    _R L_____ Initials

(C) This provision shall not be effective until the procedures of Title 49, Code of Federal Regulations, Part 21 are followed and completed including exercise or expiration of appeal rights. The remedies for breach of this provision shall be those remedies provided under said regulations.

(D) User, for itself, its personal representatives, successors in interest, and assigns, as part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land comprising the Property, that (1) it shall furnish its services on a reasonable, and not unjustly discriminatory, basis to all users of said services, and (2) it shall charge reasonable, and not unjustly discriminatory, prices for each unit or service, provided that User may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers or users.

7.8. Federal Subordination. This Agreement is subordinate to the provisions of any existing or future agreements between the Airport and the United States of America relative to the operation and maintenance of the Airport, the execution of which has been or may be required as a condition precedent to the expenditure of Federal funds for the development of the Airport. All provisions of this Agreement are subordinate to the right of the United States of America to lease or otherwise assume control over the Airport, or any part thereof, during time of war or national emergency for military or naval use. Any provisions of this Lease inconsistent with the provisions of any lease to, or assumption of control by, the United States of America shall be suspended.

\*     \*     \*

7

**RULES AND REGULATIONS**

These guidelines are not all-inclusive and may be modified or added to at any time by Operator provided such guidelines are reasonable, uniformly applied and do not modify any provision of the Agreement.

1.  Storage lockers situated in a hangar are to be acquired through Operator to ensure uniformity in color and size. These lockers shall be on casters to allow moving for cleaning purposes.

2.  All Aircraft support equipment is to be secured and stored inside each tenant shop when not in use and at the end of the workday. This includes power carts, jacks, toolboxes and parts. Work stands and other equipment too large for the shops will be stored in a designated area of the hangars and the use of that space shall be charged to User.

3.  A clean work area is the responsibility of User. It is Operator's intention to maintain a high degree of cleanliness at all times. All spills and debris are to be contained and cleaned by User immediately.

4.  No vehicles are permitted in the hangar or other restricted areas, other than Operator-owned tugs for repositioning aircraft and forklift operations as necessary.

5.  All radio and music reproduction equipment is banned from the hangar floor. User may play music inside of its shop or office Space at a reasonable volume level so long as it is not audible in other offices or on the hangar floor.

6.  User shall not block open any hangar access doors or fire doors.

7.  Operator will not provide car parking and transportation to the commercial airline terminal for individuals not directly using User's corporate aircraft at the Facility.

8.  All of User's employees, agents, independent contractors and invitees shall obtain and display proper identification in accordance with prevailing regulations of the Airport for all areas of the Facility where required. All costs incurred in obtaining such required identification badge authorizations or endorsements shall be borne wholly by User.

9.  User is not permitted to store or maintain hazardous or toxic materials and/or regulated substances as defined by Local, State, and Federal environmental regulations on or in the Space (with the exception of fuel and oil on board an aircraft as well as cleaning solvents, used for cleaning parts and accessories, provided that storage of such solvents will be in containers that meet the specifications, if any, of the applicable guidelines and regulations) without prior authorization from Operator which may be withheld at Operator's reasonable discretion. In the event of a hazardous or toxic material spill, User shall notify Operator immediately. User shall be responsible for the proper handling, removal and disposal of all hazardous or toxic materials and/or regulated substances generated by User, its employees, agents, independent contractors and invitees, as a result of its and their use of the Space and/or contiguous common areas. Storage, handling, removal and disposal of all such hazardous materials and/or regulated substances shall be accomplished by User at its expense in accordance with Local, State, and Federal guidelines and regulations.

i

**Commercial General Liability:**  Commercial General Liability Insurance which provides liability insurance coverage for bodily injury and property damage arising from User's use or occupancy of the Space provided for under the terms of this Agreement in an amount not less than fifty million dollars ($50,000,000) each occurrence and in the annual aggregate in accordance with industry standards.  Such insurance shall include war risks, hijack and other perils liability coverage to the extent such is commercially available.

**Aircraft Liability and Physical Damage:**  The following insurance requirements shall apply to all Aircraft (including any substitute aircraft) identified on the Summary of Terms:

(i)Liability insurance for the Aircraft, both in flight and not in flight, with limits not less than fifty million dollars ($50,000,000) for each occurrence, including bodily injury (including passenger bodily injury), property damage and personal injury liability damage arising from User's operations, including the ownership, maintenance or use of Aircraft or use or occupancy of the Space under the terms of this Agreement in an amount not less than fifty million dollars ($50,000,000) each occurrence and in the annual aggregate in accordance with industry standards. Such insurance shall include war risks, hijack and other perils liability coverage to the extent such is commercially available; and

(ii) All risk ground and flight physical damage insurance covering the Aircraft and personal property therein against any loss, theft or damage. Such insurance shall include war risks, hijack and other perils liability coverage to the extent such is commercially available.

**Property Insurance:**  Property Insurance in sufficient coverage amounts to insure against loss of or damage to all owned, leased and/or borrowed tools, equipment and other property of User and its agents, invitees and employees and coverage as is reasonable for loss of or damage to tools, equipment and property of third parties.  Failure of the Customer to secure and maintain such insurance shall not, in any manner, obligate or render Operator, its agents or employees liable for claims of User or any third party for loss of or damage to such property.

| **Worker's Compensation:** | Coverage A | Workers Compensation – to statutory requirements |
|---|---|---|
| | Coverage B | Employers Liability – coverage limit of not less than one million dollars ($1,000,000) |

**Automobile Liability Insurance:**  Automobile Liability Insurance to a minimum limit of five hundred thousand dollars ($500,000) per occurrence for all of User's owned, nonowned or hired vehicles operating on or proximate to the Airport premises.  If User's activities require vehicle access and/or support equipment access to any areas of the Airport where aircraft are stored, serviced or operated, User shall further be required to obtain Comprehensive Automobile Liability coverage in an amount not less than one million dollars ($1,000,000).

ii

**EXHIBIT A**
**SPECIAL CONDITIONS**

1.  Aircraft can be interchanged throughout the month, so long as the approximate average size of aircraft is equivalent to a Gulfstream G-IV. If the average size, as determined by the Operator, is more than the dimensions of a G-IV then the rates will be modified for that month using the same per square foot rate utilized in the Summary of Terms and will be documented on the Operator's invoice.

2.  Upon pre-approval by the Operator, additional aircraft can be stored in the hangar using the daily rate less a 25% discount, so long as space is available.

3.  The User has a discounted rate for one aircraft of $10.25/sf as shown in the Summary of Terms with the commitment of an initial two (2) year term. If User elects to add additional aircraft of equivalent size to the hangar rent schedule then the annual rate shall be reduced to $9.50/sf for the square footage of aircraft. The rate calculation for storage of the aircraft in the second year and all following years shall be the amount per square foot +CPI-U as determined by the Bureau of Labor Statistics. (For example, 10.25/sf+CPI-U.). This Agreement will be amended at that time to reflect these changes.

4.  User agrees to a Minimum Annual Guarantee (MAG) of 200,000 gallons of fuel purchased from Operator. Operator agrees to discount fuel to User using a calculation of the Cost of Fuel plus a certain margin of $0.80/gallon. Should User not consume the number gallons listed as the MAG then User shall compensate Operator for the difference in gallons multiplied times the margin ($0.80) within 30 days after the annual anniversary date of this Agreement. Operator shall be responsible for maintaining records of fuel consumed by Operator and updating as necessary.

5.  User Fuel Margin subject to CPI adjusted each year, typically on or about January 1st. "CPI" as used in the Exhibits to this Agreement means the index known as the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index, All Urban Consumers, United States City Average or the successor index reasonably selected by Landlord that most closely approximates the CPI. The Fuel Margin outlined in this Exhibit A is based on 2019 rates and subject to increase.

ii

# EXHIBIT 2

# CLAIM OF LIEN

On this 28th day of May, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1056, registered with the United States Federal Aviation Administration as N685MF, which Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Forty-Seven Thousand Four Hundred Fifty-Two and 31/100 United States Dollars (US$47,452.31), of which there remains an unpaid balance of Forty-Seven Thousand Four Hundred Fifty-Two and 31/100 United States Dollars (US$47,452.31), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on March 1, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB G-IV VI LLC, at 2104 Lakehaven Point, Longwood, FL 32779, on May 28, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 67.

Page 1

RECORDED BY
Federal Aviation Administration
Civil Aviation Registry
Date 7-8-2020 Time 9:01
Conveyance Number DP023660

A

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _____
Kyle Eiserer, President

State of Florida     }
                    }
County of Brevard   }

BEFORE ME this _28th_ day of May 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

2

# CLAIM OF LIEN

On this 28th day of May, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1056, registered with the United States Federal Aviation Administration as N685MF, which Aircraft is owned by SMB G-IV VI LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Forty-Seven Thousand Four Hundred Fifty-Two and 31/100 United States Dollars (US$47,452.31), of which there remains an unpaid balance of Forty-Seven Thousand Four Hundred Fifty-Two and 31/100 United States Dollars (US$47,452.31), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on March 1, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB G-IV VI LLC, at 2104 Lakehaven Point, Longwood, FL 32779, on May 28, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 67.

AVIATION LEGAL GROUP PA
5525 NW 15TH AVE
STE 301A
FORT LAUDERDALE, FL 33309

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _____
Kyle Eiserer, President

State of Florida        }
                        }
County of Brevard       }

BEFORE ME this 29th day of May 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021





17 July 2020

FILED WITH FAA
AIRCRAFT
REGISTRATION BR
2020 JUL 17 PM 3: 26
OKLAHOMA CITY
OKLAHOMA

FEDERAL AVIATION ADMINISTRATION
AIRCRAFT REGISTRATION BRANCH
OKLAHOMA CITY, OK

RE:  N298RB      Gulfstream Aerospace G-IV      SN: 1341

Ladies and Gentlemen:

We are enclosing the following document for your review and acceptance

_____X_____      Mechanics Lien

Please return the original recorded documents to AIC Title Service in the Public Documents Room.

If for any reason you find the documents to be unacceptable for recordation or not needed for FAA records please return them to AIC Title Service, LLC in the Public Documents Room. Please return the original recorded document to AIC in the PD Room.

Sincerely,

Callie Meier
cmeier@aictitle.com

AIC Title Service, LLC Staff              FAA fees:  $5.00

6350 W Reno • Oklahoma City, OK  73127 • Ph: 800.288.2519 or 405.948.1811 • Fax: 405.948.1869 • www.aictitle.com

*2*

# CLAIM OF LIEN

On this 28th day of May, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1341, registered with the United States Federal Aviation Administration as N298RB, which Aircraft is owned by SMB G-IV IV LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), of which there remains an unpaid balance of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on March 1, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB G-IV IV LLC, at 2104 Lakehaven Point, Longwood, FL 32779, on May 28, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 81.

Page 1

AVIATION LEGAL GROUP PA
5525 NW 15TH AVE
STE 301A
FORT LAUDERDALE, FL 33309

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _Kyle Ei_____
Kyle Eiserer, President

State of Florida            }
                            }
County of Brevard           }

BEFORE ME this _28th_ day of May 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is (personally known) to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

Page 2

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION

OMB Control No. 2120-0043
Expires 12/31/2020

# NOTICE OF RECORDATION – AIRCRAFT SECURITY CONVEYANCE
## PART I - CONVEYANCE RECORDATION NOTICE

This section acknowledges the recording of a security conveyance covering the collateral shown.

NAME (last name first) OF DEBTOR

NAME and ADDRESS OF CLAIMANT

APEX EXECUTIVE JET CENTER INC
2881 E OAKLAND PARK BLVD
FORT LAUDERDALE, FL  33306
|..||..||..||..||..||..||..||..|.|

NAME OF SECURED PARTY'S ASSIGNOR (if assigned)

THE FOLLOWING COLLATERAL IS COVERED BY THE CONVEYANCE:
N272TX 1322          GULFSTREAM AEROSPACE   G-IV
N
N
N

THE CLAIM OF LIEN  DATED      5/28/2020                    COVERING THE ABOVE COLLATERAL WAS RECORDED BY

THE CIVIL AVIATION REGISTRY ON     Jun 11, 2020        AS CONVEYANCE NUMBER       TK015363

*Toni Kaplan*

TONI KAPLAN, LEGAL INSTRUMENTS EXAMINER

## PART II – RELEASE

Use of this section of the form by the security holder is optional. This section is only a suggested form of release that meets the recording requirements of the Federal Aviation Act of 1958, as amended, and the regulations issued thereunder. In addition to those requirements, the form used by the security holder should be drafted in accordance with the pertinent provisions of local statutes and other applicable federal statutes. This form may be reproduced. There is no fee for recording a release.
Send to: Aircraft Registration Branch, PO Box 25504, Oklahoma City, Oklahoma 73125.

The undersigned hereby certifies that they are the true and lawful holder of the note or other evidence of indebtedness secured by the conveyance referred to herein on the above described collateral and that the same collateral is hereby released from the terms of the conveyance. Provided that no express warranty is given nor implied by reason of execution or delivery of the release, any title retained in the collateral by the conveyance is hereby sold, granted, transferred and assigned to the party that executed the conveyance or to the assignee of said party if the conveyance was assigned.

DATE OF RELEASE: _____

SECURITY HOLDER: _____

SIGNATURE (In Ink) _____

TITLE: _____

(A person signing for a corporation must be a corporate officer or hold a managerial position and must show title. A person signing for another should see 14 CFR Parts 47 and 49 of the Federal Aviation Regulations.)

ACKNOWLEDGMENT (If Required By Applicable Local Law):

AC Form 8050-41 (12/2020)

# CLAIM OF LIEN

On this 28th day of May, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1322, registered with the United States Federal Aviation Administration as N272TX, which Aircraft is owned by SMB G-IV I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), of which there remains an unpaid balance of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on March 1, 2020.  This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes.  Lienor served notice to the owner, SMB G-IV I LLC, at 2104 Lakehaven Point., Longwood, FL 32779, on May 28, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 74.

RECORDED BY
Federal Aviation Administration
Civil Aviation Registry
Date 6-11-2020 Time 8:31
Conveyance Number TK015363

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _Kyle E_____
Kyle Eiserer, President

State of Florida          }
                          }
County of Brevard         }

BEFORE ME this _28ᵗʰ_ day of May 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

# CLAIM OF LIEN

On this 28th day of May, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1322, registered with the United States Federal Aviation Administration as N272TX, which Aircraft is owned by SMB G-IV I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), of which there remains an unpaid balance of Forty-Five Thousand Five and 07/100 United States Dollars (US$45,005.07), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on March 1, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB G-IV I LLC, at 2104 Lakehaven Point., Longwood, FL 32779, on May 28, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 74.

AVIATION LEGAL GROUP PA
5525 NW 15TH AVE
STE 301A
FORT LAUDERDALE, FL 33309

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _Kyle Ei_____
Kyle Eiserer, President

State of Florida }
}
County of Brevard }

BEFORE ME this _29th_ day of May 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is (personally known) to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

Page 2

# NOTICE OF RECORDATION – AIRCRAFT SECURITY CONVEYANCE
## PART I - CONVEYANCE RECORDATION NOTICE

This section acknowledges the recording of a security conveyance covering the collateral shown.

NAME (last name first) OF DEBTOR

NAME and ADDRESS OF CLAIMANT

APEX EXECUTIVE JET CENTER INC
2881 E OAKLAND PARK BLVD
FORT LAUDERDALE FL 33306

NAME OF SECURED PARTY'S ASSIGNOR (if assigned)

THE FOLLOWING COLLATERAL IS COVERED BY THE CONVEYANCE:

| | | |
|---|---|---|
| N204JK 5015 | CANADAIR LTD | CL-600-2B16 |
| N | | |
| N | | |
| N | | |

THE CLAIM OF LIEN DATED **JUNE 16, 2020** COVERING THE ABOVE COLLATERAL WAS RECORDED BY

THE CIVIL AVIATION REGISTRY ON **Aug 01, 2020** AS CONVEYANCE NUMBER **MC037557**

*Maurice Coleman* (signature)

MAURICE COLEMAN, LEGAL INSTRUMENTS EXAMINER

## PART II – RELEASE

Use of this section of the form by the security holder is optional. This section is only a suggested form of release that meets the recording requirements of the Federal Aviation Act of 1958, as amended, and the regulations issued thereunder. In addition to those requirements, the form used by the security holder should be drafted in accordance with the pertinent provisions of local statutes and other applicable federal statutes. This form may be reproduced. There is no fee for recording a release.
Send to: Aircraft Registration Branch, PO Box 25504, Oklahoma City, Oklahoma 73125.

The undersigned hereby certifies that they are the true and lawful holder of the note or other evidence of indebtedness secured by the conveyance referred to herein on the above described collateral and that the same collateral is hereby released from the terms of the conveyance. Provided that no express warranty is given nor implied by reason of execution or delivery of the release, any title retained in the collateral by the conveyance is hereby sold, granted, transferred and assigned to the party that executed the conveyance or to the assignee of said party if the conveyance was assigned.

| | |
|---|---|
| DATE OF RELEASE: _____ | ACKNOWLEDGMENT (If Required By Applicable Local Law): |
| SECURITY HOLDER: _____ | |
| SIGNATURE (In Ink) _____ | |
| TITLE: _____ | |
| (A person signing for a corporation must be a corporate officer or hold a managerial position and must show title. A person signing for another should see 14 CFR Parts 47 and 49 of the Federal Aviation Regulations.) | |

AC Form 8050-41 (12/2020)

# CLAIM OF LIEN

On this 16th day of June, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain CANADAIR LTD model CL-600-2B16 aircraft, manufacturer's serial number 5015, registered with the United States Federal Aviation Administration as N204JK, which Aircraft is owned by SMB CHALLENGER I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Seven Thousand Eight Hundred Forty-Eight and 45/100 United States Dollars (US$7,848.45), of which there remains an unpaid balance of Seven Thousand Eight Hundred Forty-Eight and 45/100 United States Dollars (US$7,848.45), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on May 17, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB CHALLENGER I LLC at 2104 Lakehaven Point, Longwood, FL 32779, on June 16, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 05.

RECORDED BY
Federal Aviation Administration
Civil Aviation Registry
Date **8-1-2020** Time **7:22**
Conveyance Number **MC037557**

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _____
Kyle Eiserer, President

State of Florida      }
                      }
County of Brevard     }

BEFORE ME this ___16th___ day of June 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is (personally known) to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.

_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

8

AVIATION LEGAL GROUP PA
5525 NW 15TH AVE STE 301A
FORT LAUDERDALE, FL 33309

# CLAIM OF LIEN

On this 16th day of June, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain CANADAIR LTD model CL-600-2B16 aircraft, manufacturer's serial number 5015, registered with the United States Federal Aviation Administration as N204JK, which Aircraft is owned by SMB CHALLENGER I LLC, which has offices at 2104 Lakehaven Point, Longwood, FL 32779, and which labor, services or material described above have a total value of Seven Thousand Eight Hundred Forty-Eight and 45/100 United States Dollars (US$7,848.45), of which there remains an unpaid balance of Seven Thousand Eight Hundred Forty-Eight and 45/100 United States Dollars (US$7,848.45), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on May 17, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, SMB CHALLENGER I LLC at 2104 Lakehaven Point, Longwood, FL 32779, on June 16, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 05.

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _Kyle Ei_____
Kyle Eiserer, President

State of Florida      }
                      }
County of Brevard  }

BEFORE ME this _16+h_ day of June 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.



_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

# CLAIM OF LIEN

On this 16th day of June, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1231, registered with the United States Federal Aviation Administration as N299MB, which Aircraft is owned by ONE WORLD AVIATION 299 LLC, which has offices at 8 The Grn, Ste A, Dover, DE 19901, and which labor, services or material described above have a total value of Fifty-Two Thousand Four Hundred Seventy-Eight and 18/100 United States Dollars (US$52,478.18), of which there remains an unpaid balance of Fifty-Two Thousand Four Hundred Seventy-Eight and 18/100 United States Dollars (US$52,478.18), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on May 17, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, ONE WORLD AVIATION 299 LLC at 8 The Grn, Ste A, Dover, DE 19901, on June 16, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 12.



RECORDED BY
Federal Aviation Administration
Civil Aviation Registry
Date 7/14/20 Time 12:15
Conveyance Number JD022790

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2020 JUN 18 AM 11: 29

OKLAHOMA CITY
OKLAHOMA

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _____
Kyle Eiserer, President

State of Florida     }
                }
County of Brevard    }

BEFORE ME this ___16th___ day of June 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.



_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021

FILED WITH FAA
AIRCRAFT
REGISTRATION BR

2020 JUN 18 AM 11: 29

OKLAHOMA CITY
OKLAHOMA

AVIATION LEGAL GROUP PA
5525 NW 15TH AVE STE 301A
FORT LAUDERDALE, FL 33309

# CLAIM OF LIEN

On this 16th day of June, 2020, Kyle Eiserer (the "Lienor"), who deposes and states from his own personal knowledge, that he is the President of Apex Executive Jet Center, Inc., and that, in accordance with a contract with JetReady, which has offices at 2881 East Oakland Park Blvd., Fort Lauderdale, FL 33306, Lienor furnished labor and services in Brevard County, Florida, consisting of hangar storage, and provisioning of fuel for that certain GULFSTREAM AEROSPACE model G-IV aircraft, manufacturer's serial number 1231, registered with the United States Federal Aviation Administration as N299MB, which Aircraft is owned by ONE WORLD AVIATION 299 LLC, which has offices at 8 The Grn, Ste A, Dover, DE 19901, and which labor, services or material described above have a total value of Fifty-Two Thousand Four Hundred Seventy-Eight and 18/100 United States Dollars (US$52,478.18), of which there remains an unpaid balance of Fifty-Two Thousand Four Hundred Seventy-Eight and 18/100 United States Dollars (US$52,478.18), and furnished the first of the labor, services or material described above on February 1, 2019, and provided the last of the labor, services or material described above on May 17, 2020. This lien is being asserted pursuant to section 713.58, Florida Statutes and section 329.41, Florida Statutes. Lienor served notice to the owner, ONE WORLD AVIATION 299 LLC at 8 The Grn, Ste A, Dover, DE 19901, on June 16, 2020, via United States Certified Mail, Return Receipt Requested, Article # 9590 9402 5572 9274 6848 12.

Under penalties of perjury, I declare that I have read the foregoing Claim of Lien and that the facts stated in it are true.

APEX EXECUTIVE JET CENTER, INC.

By: _Kye Ei_____
Kyle Eiserer, President

State of Florida     }
                        }
County of Brevard   }

BEFORE ME this __16th__ day of June 2020. personally appeared Kyle Eiserer, President of Apex Executive Jet Center, Inc., who is personally known to me or produced _____ as identification and who, after being duly sworn, deposes and says that that the foregoing is true and accurate.



_____
(Notary Public)

JAMES TOLER JR
Commission # GG 101748
My Commission Expires
May 04, 2021