**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CIARDI CIARDI & ASTIN**
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire

1905 Spruce Street
Philadelphia, PA 19103
(215) 557-3550

**In re:**

**All In Jets, LLC d/b/a JetReady,**

**Debtor.**

Case No. 20-11831

Judge: Michael E. Wiles

Chapter 11, Subchapter V, Small Business Debtor Reorganization

ALL IN JETS, LLC, the debtor(s) in the above-captioned case and debtor(s)-in- possession (the "Debtor"), propose(s) the following Plan under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code").

**ALL CREDITORS AND EQUITY SECURITY HOLDERS SHOULD REFER TO ARTICLE V AND APPENDIX 1 OF THIS PLAN FOR INFORMATION REGARDING THE PRECISE TREATMENT OF THEIR CLAIMS OR INTERESTS. YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.) THIS PLAN IS A PROPOSAL BY THE DEBTOR AND SUBJECT TO COURT APPROVAL AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING. YOU ALSO HAVE THE RIGHT TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN. YOU WILL BE PROVIDED AN ORDER FROM THE BANKRUPTCY COURT SETTING IMPORTANT DATES AND DEADLINES RELATIVE TO APPROVAL OF THIS PLAN.**

<u>**DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION**</u>

### ARTICLE I
### BACKGROUND, HISTORY OF THE DEBTOR'S BUSINESS, AND PRE-PETITION FINANCIAL INFORMATION

A.  *Nature and History of the Debtor's Pre-Petition Business or Commercial Activities*

The Debtor is a Florida Corporation, with addresses at (1) 655 Madison Ave., 20th Floor, New York, New York 10065, (2) 2419 E. Commercial Blvd., Suite 202, Fort Lauderdale, FL 33308, (3) Pompano Florida, and (4) 180 S. Apollo Blvd., Melbourne, Fl 329201. The Debtor is a private jet charter operator and aircraft management company offering flights worldwide with a floating charter fleet of heavy to midsize jets including Gulfstream GIVSPs, Gulfstream GIVs, Challenger 601s and Hawker 800 models.

B.  *Legal Structure and Ownership of the Debtor*

The Debtor is a limited liability company organized under the State laws of Florida. Seth Bernstein is the 100% owner of all membership interests of the Debtor. Seth Bernstein is the only managing member of the Debtor and holds all offices of the Debtor.

C.  *Events Leading to the Debtor's Bankruptcy Filing*

The Debtor's primary asset is its Part 135 certificate and the Standard Operating Procedures, manuals and protocols as well as staff that are attendant to that certificate. The Debtor has approximately $5,000,000 in unsecured debt. The Debtor is unable to continue operations with this large overhang of debt.

The Debtor believes its Part 135 Certificate to be worth $600,000. Prior to the filing of the petition, the Debtor located an entity willing to take over management and ownership of the Debtor through the bankruptcy process. As part of this Plan the Debtor's new equity holders will infuse $600,000 over time to be used to pay creditors.

D.  *Summary of Debtor's Historical Financial Condition*

1.  <u>Asset Summary</u>

| Fixed Assets | $47,012.76 |
|---|---|
| Intellectual Property | $600,000.00 |
| Cash and Deposits | $0.00 |
| Accounts Receivable | $0.00 |
| **TOTAL** | **$647,012.76** |

1

2. Liability Summary

| Secured Debt | $0.00 |
| Priority Unsecured Debt | $1,054,542.85[1] |
| Nonpriority Unsecured Debt | $5,228,671.97 |
| **TOTAL UNSECURED DEBT** | **$5,688,673.67** |

3. Revenue History

| 2017 | $860,277.56 |
| 2018 | $8,732,524.70 |
| 2019 | $7,284,473.76 |
| 2020 | $2,689,943.44 |

## ARTICLE II
## SYNOPSIS OF PLAN

This Plan proposes that the Reorganized Debtor will issue new equity upon confirmation of the Plan. Pursuant to the terms of the Plan, the Debtor will pay $600,000 in sixty (60) equal monthly payments of $10,000 to creditors following Confirmation. Every six (6) months following confirmation the Reorganized Debtor will issue a dividend of $60,000 to be paid directly to creditors throughout the term of the Plan. Such dividends will be disbursed in satisfaction of all claims in the case.

The Plan proposes that the Debtor transfer ownership of the business by canceling existing equity and issuing new equity upon Confirmation. The Reorganized Debtor will then emerge from the bankruptcy holding all property vested in the Reorganized Debtor free and clear of any and all claims or interests in accordance with the Bankruptcy Code. By eliminating the large overhang of debt, the Reorganized Debtor can resume the normal business operations of the Debtor at a profit. At the same time, the dividends issued by the Reorganized Debtor will allow general unsecured creditors to receive a return on their claims.

Since the filing of the petition, the Debtor, its management, and Debtor's counsel have sought to propose and confirm a consensual plan of reorganization.

## ARTICLE III
## PLAN TERM

The term of this Plan begins on the date that this Plan is confirmed by the Bankruptcy Court and ends on the sixtieth (60th) month following that date.

---

[1] The IRS's priority tax claim (**POC #11-1**) is disputed. The Debtor asserts that the correct amount of the claim is $460,000.00.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, claims of a kind described by § 507(a)(2), (3) and (8) have not been separately classified by the Plan. Treatment of those claims are described below:

*A. Administrative Priority Claims*

>  1. <u>Administrative Priority Claims Paid in Full</u>. Unless the holder of an Allowed Administrative Priority Claim separately agrees to different treatment, holders of Allowed Administrative Priority Claims shall receive cash, as of the effective date, of a value equal to the allowed amount of each such claim. The Debtor estimates that its professional fees and other administrative expenses total approximately $50,000.

>  2. <u>Allowance of Administrative Claims</u>. All parties claiming an administrative expense priority under § 507(a)(2) of the Bankruptcy Code, whether secured or unsecured, such claims that are treated under this Plan shall not be obligated to file an application with the Bankruptcy Court to approve their administrative expense priority status. The parties described in the foregoing include the Subchapter V trustee, and Debtor's Counsel. All other parties claiming an administrative expense priority shall be required to file an application with the Bankruptcy Court to approve their asserted administrative expense priority no later than thirty (30) days after the Confirmation of this Plan.

*B. Priority Tax Claims*

Unless the holder of a priority tax claim under § 507(a)(8) of the Bankruptcy Code separately agrees to different treatment of their claim, holders of such claims shall have their claims treated in accordance with § 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE V
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Debtor has classified all claims and interests in accordance with § 1122 and § 1123 of the Bankruptcy Code. Attached hereto as **Appendix 1** is a Schedule of Creditors, their claims, and the proposed classification of each. For a full list of creditors in this case, the Debtor refers to its previously filed schedules and the claims register with the Bankruptcy Court.

*A. Summary of Proposed Classification and Treatment of Claims and Interests*

>  1. <u>Class 1</u> consists of Priority Wage Claims under § 507(a)(4) of the Bankruptcy Code. Holders of Class 1 claims shall be paid cash, on the effective date of the Plan, of a value equal to the allowed amount of each such claim. Holders of Class 1 claims are considered unimpaired by the Plan and are therefore conclusively presumed to have accepted the Plan pursuant to § 1126(f). Therefore, holders of Class 1 claims are not entitled to vote to accept or reject the Plan.

2. Class 2 consists of all Allowed General Unsecured Claims. The Plan proposes to pay holders of Class 2 claims their pro rata share of whatever remains from the $600,000 distribution after payment of administrative claims, priority wages and priority taxes. Holders of Class 2 claims are considered impaired pursuant to § 1124(1) of the Bankruptcy Code. Therefore, holders of Class 2 claims are entitled to vote to accept or reject the Plan.

3. Class 3 consists of the pre-petition membership interests of the Debtor held by Seth Bernstein. The Plan proposes to cancel those interests upon Confirmation. Holders of Class 3 interests will not receive any property or be entitled to share in any disbursements under the Plan on account of such interests. Accordingly, holders of Class 3 interests are considered impaired, and are deemed not to have accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.

B. *Disputed Claims*

1. Definition. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and either:

   i. is a Proof of Claim that has been filed or deemed filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated on the Debtor's Bankruptcy Schedules that the claim is disputed; or

   ii. no Proof of Claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

2. Delay of Distribution on Disputed Claim. No distribution will be made on account of a Disputed Claim, unless such claim is allowed by a final non-appealable order.

3. Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

## ARTICLE VI
## TRUSTEE COMPENSATION

The Subchapter V trustee shall be paid for services rendered in this case as an Administrative Expense Claim under § 503(b)(2) entitled to priority under § 507(a) of the Bankruptcy Code and pursuant to Article IX of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VII
## ATTORNEY COMPENSATION

The Debtor's Counsel shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 503(b)(1) entitled to priority pursuant to § 507(a) of the

Bankruptcy Code and Article IV of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VIII
## SOURCE AND MANNER OF PLAN PAYMENTS

### A. Source of Plan Payments

Upon confirmation of this Plan, the Reorganized Debtor will pay $10,000 per month, in cash, for sixty (60) months, i.e., the term of this Plan. Such payments shall not be derived from the commercial operations of the Reorganized Debtor's business.

### B. Manner of Payments to Creditors

Upon the effective date, and every six (6) months thereafter, until the completion of the term of this Plan, the Reorganized Debtor shall issue a dividend of $60,000 to be disbursed to creditors in satisfaction of their claims.

The dividend disbursed by the Reorganized Debtor to creditors on account of their claims shall be paid directly to creditors by sending a cashier's check via First Class Mail, United States Postal Service, to the address listed with the Debtor or such creditors' authorized agent.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS, PAYMENTS, AND PRIORITIES

### A. Priority of Payments for Cash Dividends Under the Plan

Payments to creditors of the bi-annual cash dividend shall be distributed according to the priorities indicated hereby:

1. First, holders of Priority Wage Claims (Class 1 Claims) shall be paid in full prior to the payment of all other claims.

2. Second, holders of Administrative Expense Claims under §§ 507(a)(2) and (3) shall be paid in full prior to the payment of all other claims, subsequent to section 1, above.

3. Third, holders of Priority Tax Claims under § 507(a)(8) shall be paid in full prior to the payment of all other claims, after payment of the foregoing claims.

4. Fourth, holders of all other claims entitled to priority under § 507(a) shall be paid in full prior to the payment of allowed general unsecured claims.

5. Fifth, after payment of the foregoing claims, sums disbursed by the Reorganized Debtor shall be paid to holders of general unsecured claims on a pro rata basis.

*B. Priority of Payments for Distributions of Property Other than Cash Dividends*

Property disbursed by the Reorganized Debtor, other than the bi-annual cash dividend discussed above, shall be paid according to the priorities hereby indicated:

1.  Pursuant to 1191(e), holders of Allowed Administrative Expense Claims under §§ 507(a)(2) and (3) shall be paid in full prior to the payment of all other claims.

2.  Except as provided by 1191(e), all other allowed claims entitled to priority under § 507(a) shall be paid according to § 1129(a)(9) of the Bankruptcy Code.

3.  After payment of the foregoing claims, holders of allowed general unsecured claims shall be paid their pro rata share of any disbursements on account of such claims.

*C. Payments Made Directly to Creditors*

The Reorganized Debtor will make all disbursements under the Plan directly to creditors. Therefore, even in the event that this Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code as a non-consensual plan, the Trustee shall not make payments to creditors under the Plan pursuant to § 1194(b) of the Bankruptcy Code.

## ARTICLE X
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. Generally*

1.  The Plan will be funded by Debtor's cash contributions, totaling $600,000 to be paid in sixty (60) equal monthly installments of $10,000. The first monthly installment will be due no later than fourteen (14) days, or as soon as practically thereafter, following entry of the order of Confirmation by this Court. Subsequent installment payments will be due no later than thirty (30) days following the first and subsequent installment payments, respectively.

2.  Upon the Court's entry of an order confirming the Debtor's Plan, or as soon as practical thereafter, but not later than fourteen (14) days following entry of the order, the pre-petition membership interests of the Debtor shall be cancelled.

3.  Simultaneously therewith, the Reorganized Debtor shall issue new membership interests to the Purchaser whereby the Purchaser shall become the sole owner of the Reorganized Debtor, holding 100% of its membership interests as follows:

**Purchaser | 1,000 shares | 100%**

*B. Execution of Documents*

Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan including but not limited to the Purchase Agreement.

*C. Retention and Enforcement of Claims*

Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553, thereof.

*D. Treatment of Executory Contracts*

To the extent that any unexpired lease or executory contract of the Debtor has not been dealt with prior to the this Plan's proposal, nor dealt with under this Plan, such unexpired leases or executory contracts shall be deemed rejected according to the applicable provisions of the Bankruptcy Code.

## ARTICLE XI
## REQUEST FOR CONFIRMATION

*A. Request for Confirmation Pursuant to 1191(a).*

The Debtor believes that the Plan as proposed meets the requirements for confirmation under 1191(a) of the Bankruptcy Code and hereby requests confirmation of the Plan.

*B. Alternative Request for Confirmation Pursuant to 1191(b).*

In the event that the Court finds that the requirements for confirmation under § 1191(a) have not been met, the Debtor represents that the Plan as proposed meets the requirements for confirmation under § 1191(b) of the Bankruptcy Code.

## ARTICLE XII
## FINANCIAL PROJECTIONS, PLAN FUNDING AND ANALYSIS

A.  *Liquidation Analysis – Best Interest of Creditors*

Pursuant to §§ 1129(a)(7)(A)(ii) and 1190(1)(B), the Debtor has prepared a liquidation analysis which demonstrates that confirmation of this Plan is in the best interest of all creditors. The following chart asserts the amount, if any, of returns to creditors were this case converted to a liquidation under Chapter 7 of Title 11 of the United States Code:

| Assets | |
|---|---|
| Tangible Personal Property – Office Furniture | $47,012.76 |
| Intellectual Property – FAA Certificate | $0 (non-fungible) |
| **VALUE OF ASSETS AVAILABLE FOR DISTRIBUTION** | **$47,012.76** |
| | |
| Liabilities and Obligations | |
| Chapter 7 Administrative Expenses | ($1,000) |
| Plan Administrative Expenses – Professional Fees | ($50,000) |
| Priority Wage Claims – 507(a)(4) | ($28,010.36) |
| Priority Tax Claims – 507(a)(8) | ($1,026,532.49) |
| **TOTAL LIABILITIES** | **($1,105,542.85)** |
| | |
| **LIQUIDATION PROCEEDS** | ($1,058,530.09) |
| | |
| **NET RETURN TO GENERAL UNSECURED CREDITORS** | **$0.00** |

B.  *Feasibility*

Pursuant to § 1129(a)(11), the Debtor asserts that following confirmation, and competition of all payments under this Plan, the business of the Reorganized Debtor will not be liquidated, nor will there be a need for further financial reorganization.

C.  *Income Projections, Plan Funding, Ability to Make Payments*

1.  Pursuant to the requirements of § 1190(1)(C), attached hereto and incorporated herein as **Appendix 2** is an exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan. The information contained in **Appendix 2** demonstrates the ability and likelihood of the Reorganized Debtor to make all payments contemplated by the Plan.

2.  Pursuant to § 1191(c)(2)(B), in the event that a consensual plan of reorganization cannot be confirmed under § 1191(a) but is confirmed under § 1191(b), the Debtor represents that the value of the property to be distributed under this Plan is not less than the Debtor's projected disposable income for the term of the Plan pursuant to §1191(c)(2)(B). The income projections demonstrate that the business is not currently

profitable, and may take several years to become profitable, especially now due to the impact that the COVID-19 pandemic has had on the airline industry. The Plan provides for the full payment of secured, administrative, and priority unsecured claims in accordance with the Bankruptcy Code. In addition, the Plan proposes a return to general unsecured creditors of approximately $25,000.00.

D. *Payment Defaults – Adequate Remedies*

Pursuant to § 1191(c)(3)(B), the Debtor proposes the following remedy should there by a default in payment:

Any creditor asserting a default in payments to be made under this Plan shall notify the Debtor not less than three (3) days after the occurrence of such default. If, after fourteen (14) days following actual receipt by the Debtor of such notice, the Debtor has not cured such default, then upon notice and an opportunity for hearing, the Debtor will request that the Court hold a status conference to discuss the possibility of conversion, dismissal, or removal of the debtor-in-possession.

## ARTICLE XIII
## MODIFICATION, AMENDMENT, WITHDRAWAL

Only the Debtor may alter, amend, or modify the Plan before or after the Confirmation Date, as provided in § 1193 of the Bankruptcy Code.

A. *Effect of Confirmation on Modification.*

Confirmation of the Plan shall mean that all modifications or amendments to the Plan thereafter are effective without the need for additional approval or disclosure.

B. *Debtor's Right to Revoke or Withdraw Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to Confirmation.

## ARTICLE XIV
## PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as provided in this Plan or the Order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Reorganized Debtor as of the Effective Date, free and clear of any claim or interest of any creditor provided for by this Plan.

## ARTICLE XV
## CONFIRMED PLAN BINDING ON DEBTOR AND CREDITORS

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each

party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

## ARTICLE XVI
## DISCHARGE

The Debtor shall become eligible for a discharge under § 1141(d) of the Bankruptcy Code upon confirmation of a plan confirmed pursuant to § 1191(a). Alternatively, if the Debtor's plan of reorganization is confirmed pursuant to § 1191(b) of the Bankruptcy Code, then upon the final payment and application to the Court by the Debtor, the Debtor shall be eligible to receive a discharge under 1192 of the Bankruptcy Code.

## ARTICLE XVII
## GOOD FAITH

The Debtor has proposed this Plan in good faith and not by any means forbidden by law. The Plan complies with all applicable provisions of the Bankruptcy Code, as well as the Plan proponent, the Debtor, in proposing this Plan.

## ARTICLE XVIII
## MISCELLANEOUS

A. *Definitions and Rules of Construction.* The definitions and rules of construction set forth in 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

B. *Effective Date of Plan.* The effective date of the Plan shall be the date upon which the first bi-annual dividend is due to be disbursed.

C. *Severability.* If any provision of this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision in the Plan.

D. *Appendices.* The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

E. *Captions.* The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

F. *Controlling Effect.* Unless a rule of law or procedure is supplied by federal law, the laws of New York State govern any controversies arising under this Plan and any and all agreements, documents, and instruments executed in connection with this Plan, except as explicitly provided in this Plan.

G. *Role of the Trustee Following Confirmation*

    1. Because the Plan proposes to pay creditors directly, the Subchapter V trustee's services with regard to payment or retention of payments to be disbursed are not necessary.

2. The Plan does not propose to commit any future earnings of the Debtor to generate a return for creditors because creditors will be paid from sources other than the business operations of the Debtor. Therefore, § 1190(2) of the Bankruptcy Code is inapplicable.

3. Pursuant to § 1183(c)(1), upon notice to the Court of substantial consummation of the confirmed Plan, the Subchapter V trustee's services shall terminate immediately.

H. *Payment Trust Account.* Each monthly payment made by the Debtor to fund the bi-annual dividend shall be deposited in an FDIC insured creditor trust account that complies with all applicable laws, rules and regulations that may apply to such accounts.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**APPENDIX I**

**CLASS 1**

| Name of Creditor | Proof of Claim Number | Nature of Claim | Amount of Claim | Disputed | Treatment | Impairment and Voting |
|---|---|---|---|---|---|---|
| James J. Walker | 1-1 | Priority wage claim under § 507(a)(4) | $7,169.24 | Yes: <br><br> No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |
| Jan Derrick Lynch | 2-1 | Priority wage claim under § 507(a)(4) | $6,280.19 | Yes: <br><br> No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |
| Diana Joyner | 3-1 | Priority wage claim under § 507(a)(4) | $2,000.00 | Yes: <br><br> No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |
| Erin Melder | 4-1 | Priority wage claim under § 507(a)(4) | $1,923.08 | Yes: <br><br> No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |
| Ryan Salazar | 5-1 | Priority wage claim under § 507(a)(4) | $2,115.00 | Yes: <br><br> No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |

| Piotr Kotlinski | 6-1 | Priority wage claim under § 507(a)(4) | $0.00 | Yes:<br><br>No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |
|---|---|---|---|---|---|---|
| TaskForce Red LLC | 8-1 | Priority wage claim under § 507(a)(4) | $8,522.14 | Yes:<br><br>No: ☑ | Paid in full on the effective date. | Claim is unimpaired; not entitled to vote. |

<div align="center">

**CLASS 2**

</div>

| Name of Creditor | Proof of Claim Number | Nature of Claim | Amount of Claim | Disputed | Treatment | Impairment and Voting |
|---|---|---|---|---|---|---|
| **\*See Debtor's filed Schedule E/F for an incomplete list of creditors holding undisputed general unsecured claims in this case.** | N/A | *[intentionally left blank]* | **\*To the extent that a creditor's claim that has been previously scheduled on the Debtor's Schedule E/F differs only in the amount scheduled from a claim separately filed with the Court, the determination of the amount of each such claim shall be governed by the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.** | **Yes:**<br><br>**No:** ☑ | Paid their pro rata share of any and all distributions, less administrative expenses and priority claims. | **\* All creditors and their claims scheduled on Debtor's Schedule E/F are impaired. Such creditors are entitled to vote to accept or reject the plan.** |
| Kathleen A. Yodice | 12-1 | General Unsecured | $71,29.11 | **Yes:** | Paid their pro rata share of any and all distributions, less administrative | This claim is impaired. The holder of this claim is entitled |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | No: ☑ | expenses and priority claims. | to vote to accept or reject the Plan. |
| Air Culinaire Worldwide LLC | 13-1 | General Unsecured | $18,721.11 | Yes: <br><br> No: ☑ | Paid their pro rata share of any and all distributions, less administrative expenses and priority claims. | This claim is impaired. The holder of this claim is entitled to vote to accept or reject the Plan. |
| Associated Energy Group, LLC | 15-1 | General Unsecured | $96,812.21 | Yes: <br><br> No: ☑ | Paid their pro rata share of any and all distributions, less administrative expenses and priority claims. | This claim is impaired. The holder of this claim is entitled to vote to accept or reject the Plan. |
| American Express National Bank | 22-1 | General Unsecured | $487,681.65 | Yes: <br><br> No: ☑ | Paid their pro rata share of any and all distributions, less administrative expenses and priority claims. | This claim is impaired. The holder of this claim is entitled to vote to accept or reject the Plan. |
| UJM I, LLC | 23-1 | General Unsecured | $2,412,043.94 | Yes: <br><br> No: ☑ | Paid their pro rata share of any and all distributions, less administrative | This claim is impaired. The holder of this claim is entitled to vote to accept |

| | | | | | expenses and priority claims. | or reject the Plan. |
|---|---|---|---|---|---|---|
| Euler Hermes N.A as Agent for Associated Energy Gr | 24-1 | General Unsecured | $91,347.88 | **Yes:**<br><br>**No:** ☑ | Paid their pro rata share of any and all distributions, less administrative expenses and priority claims. | This claim is impaired. The holder of this claim is entitled to vote to accept or reject the Plan. |

## CLASS 3

| Identity of Interest Holder | Nature of Interest | Amount of Claim | Disputed | Treatment |
|---|---|---|---|---|
| Seth Bernstein | Holder of 100% of pre-petition membership interests of the Debtor. | Undetermined/None | **Yes:**<br><br>**No:** ☑ | The pre-petition membership interest of the Debtor will be cancelled upon Confirmation. Seth Bernstein as the only member of Class 3 shall not receive any property or be entitled share in any distributions made by the Debtor under the Plan on account of such interests. |

**Appendix 2**

## Income Projections

- Plan Year 1

    - Total Income: $0.00

    - Disposable Income: $0.00

- Plan Year 2

    - Total Income: $0.00

    - Disposable Income: $0.00

- Plan Year 3

    - Total Income: $0.00

    - Disposable Income: $0.00

- Plan Year 4

    - Total Income: $0.00

    - Disposable Income: $0.00

- Plan Year 5

    - Total Income: $0.00

    - Disposable Income: $0.00

## Narrative

The business operations of the Debtor ceased in 2020 due to the large amount of unsecured debt and the COVID-19 pandemic affecting the travel industry. Therefore, on that basis, the Debtor does not have sufficient information to project its future income at this time.