| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | |
| **CIARDI CIARDI & ASTIN**<br>Albert A. Ciardi, III, Esquire<br>Jennifer C. McEntee, Esquire<br>1905 Spruce Street<br>Philadelphia, PA 19103<br>(215) 557-3550 | Case No. 20-11831<br><br>Judge: Michael E. Wiles<br><br>Chapter 11, Subchapter V, Small Business Debtor Reorganization |
| **In re:**<br><br>**All In Jets, LLC d/b/a JetReady,**<br><br>Debtor. | |

On August 9, 2020 (the "Petition Date"), ALL IN JETS, LLC d/b/a JETREADY, the debtor in the above-captioned case and debtor-in- possession (the "Debtor"), filed for chapter 11 bankruptcy protection. The Debtor proposes the following First Amended Plan (the "Plan") under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code").

**ALL CREDITORS AND EQUITY SECURITY HOLDERS SHOULD REFER TO ARTICLE V OF THIS PLAN FOR INFORMATION REGARDING THE PRECISE TREATMENT OF THEIR CLAIMS OR INTERESTS. YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.) THIS PLAN IS A PROPOSAL BY THE DEBTOR AND SUBJECT TO COURT APPROVAL AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING. YOU ALSO HAVE THE RIGHT TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN. YOU WILL BE PROVIDED WITH AN ORDER FROM THE BANKRUPTCY COURT SETTING IMPORTANT DATES AND DEADLINES RELATIVE TO APPROVAL OF THIS PLAN.**

# DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

## ARTICLE I

## BACKGROUND, HISTORY OF THE DEBTOR'S BUSINESS, AND PRE-PETITION FINANCIAL INFORMATION

*A. Nature and History of the Debtor's Pre-Petition Business or Commercial Activities*

The Debtor is a Florida Corporation, with an address of 655 Madison Ave., 20th Floor, New York, New York 10065. The Debtor is a private jet charter operator and aircraft management company that offered flights worldwide with a floating charter fleet of heavy to midsize jets including Gulfstream GIVSPs, Gulfstream GIVs, Challenger 601s and Hawker 800 models.

*B. Legal Structure and Ownership of the Debtor*

The Debtor is a limited liability company organized under the State laws of Florida. Seth Bernstein is the 100% owner of all membership interests of the Debtor. Seth Bernstein is the only managing member of the Debtor and holds all offices of the Debtor.

*C. Events Leading to the Debtor's Bankruptcy Filing*

The Debtor's primary asset is its Part 135 Certificate and the corresponding Standard Operating Procedures, manuals and protocols as well as employees maintained by the Debtor that are attendant to the Part 135 Certificate. The Debtor has approximately $5,000,000 in unsecured debt and ceased jet charter and aircraft management operations prior to the Petition Date.

The Debtor believes its Part 135 Certificate to be worth approximately $600,000 based upon its knowledge of the market and the sale process it instituted in this bankruptcy case with the filing of its motion for authority to sell certain assets free of liens, claims, and encumbrances (the "Sale Motion") on December 21, 2020. *See* Docket No. 47. Indeed, prior to the Petition Date, the Debtor located an entity willing to take over management and ownership of the Debtor through the bankruptcy process. However, this potential buyer backed out after the filing of the Debtor's initial plan. The Debtor filed the Sale Motion to reflect a new buyer and a bidding structure agreed upon by parties in interest. *See* Docket No. 47. A new buyer, Aviation House Investments, LLC, emerged during the bidding process and was qualified by the Debtor. However, prior to the auction, the FAA, through the United States Attorney's Office, objected to the proposed sale of the Part 135 Certificate. The Debtor files this Plan, therefore, to appease both the FAA and Aviation House Investments, LLC. The funding of the Plan will therefore come from of the cancellation of all existing membership interests of the Debtor and the issuance of new interests to Aviation House Investments, LLC ("Aviation House") in return for funding the distribution under the Plan in the amount of $650,000 (the "Purchase Price"). Upon confirmation, Aviation House will own the Debtor and fund the Plan distributions.

*D. Summary of Debtor's Historical Financial Condition*

1. Asset Summary

| Fixed Assets | $47,012.76 |
|---|---|
| Intellectual Property | $600,000.00 |
| Cash and Deposits | $0.00 |
| Accounts Receivable | $0.00 |
| **TOTAL** | **$647,012.76** |

2. Liability Summary

| Secured Debt | $0.00 |
|---|---|
| Priority Unsecured Debt | $1,054,542.85[1] |
| Nonpriority Unsecured Debt | $5,228,671.97 |
| **TOTAL UNSECURED DEBT** | **$5,688,673.67** |

3. Revenue History

| 2017 | $860,277.56 |
|---|---|
| 2018 | $8,732,524.70 |
| 2019 | $7,284,473.76 |
| 2020 | $2,689,943.44 |

## ARTICLE II
## SYNOPSIS OF PLAN

This Plan proposes that the Debtor all of its existing equity and reissue 100% of new equity to Aviation House upon Confirmation of the Plan. Pursuant to the terms of the Plan, post-confirmation, the Debtor will pay $650,000 with $50,000 distributed to the Liquidating Trustee at Confirmation plus a note for $600,000 (the "Buyer Note") paid as follows: $50,000 on the 6 month anniversary of the Effective Date and then 18 equal monthly installments sufficient to pay the balance of the note in full with interest at three percent (3%). The Confirmation Order shall confirm that the Reorganized Debtor owns its assets and the Part 135 Certificate free and clean of all liens, claims, and encumbrances.

The Plan proposes that the membership interests of the Debtor are sold to Aviation House Investments, LLC for consideration to be paid under the Plan of $650,000, cancelling existing equity and issuing new interests to Aviation House Investments, LLC in return for receipt of the Purchase Price.

---

[1] The IRS's priority tax claim (**POC #11-1**) is disputed. The Debtor asserts that the correct amount of the claim is $460,000.00.

2

Since the filing of the petition, the Debtor, its management, and Debtor's counsel have sought to propose and confirm a consensual plan of reorganization.

## ARTICLE III
## PLAN TERM

The term of this Plan begins on the date that this Plan is confirmed by the Bankruptcy Court and ends on the twenty-fourth (24th) month following that date.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, claims of a kind described by § 507(a)(2), (3) and (8) have not been separately classified by the Plan. Treatment of those claims are described below:

*A. Administrative Priority Claims*

1. <u>Administrative Priority Claims Paid in Full</u>. Unless the holder of an Allowed Administrative Priority Claim separately agrees to different treatment, holders of Allowed Administrative Priority Claims shall receive cash, as of the effective date, of a value equal to the allowed amount of each such claim. The Debtor estimates that its professional fees and other administrative expenses total approximately $100,000.

2. <u>Allowance of Administrative Claims</u>. All parties claiming an administrative expense priority under § 507(a)(2) of the Bankruptcy Code, whether secured or unsecured, such claims that are treated under this Plan shall not be obligated to file an application with the Bankruptcy Court to approve their administrative expense priority status. The parties described in the foregoing include the Subchapter V trustee, and Debtor's Counsel. All other parties claiming an administrative expense priority shall be required to file an application with the Bankruptcy Court to approve their asserted administrative expense priority no later than thirty (30) days after the Confirmation of this Plan.

*B. Priority Tax Claims*

Unless the holder of a priority tax claim under § 507(a)(8) of the Bankruptcy Code separately agrees to different treatment of their claim, holders of such claims shall have their claims treated in accordance with § 1129(a)(9)(C) of the Bankruptcy Code. The Debtor is aware of only the proof of claim filed by the IRS in the amount of $1,054,542.85 and disputes the amount claimed therein. *See* Proof of Claim 11. The Debtor submits the amount of this claim is $460,000.

3

# ARTICLE V
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Debtor has classified all claims and interests in accordance with § 1122 and § 1123 of the Bankruptcy Code. For a full list of creditors in this case, the Debtor refers to its previously filed schedules and the claims register with the Bankruptcy Court.

### A. *Summary of Proposed Classification and Treatment of Claims and Interests*

1. Class 1 consists of Priority Wage Claims under § 507(a)(4) of the Bankruptcy Code. Holders of Class 1 claims shall be paid cash, on the effective date of the Plan, of a value equal to the allowed amount of each such claim. Holders of Class 1 claims are considered unimpaired by the Plan and are therefore conclusively presumed to have accepted the Plan pursuant to § 1126(f). Therefore, holders of Class 1 claims are not entitled to vote to accept or reject the Plan.

2. Class 2 consists of all Allowed General Unsecured Claims. The Plan proposes to pay holders of Class 2 claims their pro rata share of whatever remains from the $650,000 distribution after payment of administrative claims, priority wages and priority taxes plus the net proceeds of any causes of action brought by the Liquidating Trustee. Holders of Class 2 claims are considered impaired pursuant to § 1124(1) of the Bankruptcy Code. Therefore, holders of Class 2 claims are entitled to vote to accept or reject the Plan.

3. Class 3 consists of the pre-petition membership interests of the Debtor held by Seth Bernstein. The Plan proposes to cancel those interests upon Confirmation. Holders of Class 3 interests will not receive any property or be entitled to share in any disbursements under the Plan on account of such interests. Accordingly, holders of Class 3 interests are considered impaired, and are deemed not to have accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.

### B. *Disputed Claims*

1. Definition. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order of the Bankruptcy Court and either:

    i.  is a Proof of Claim that has been filed or deemed filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated on the Debtor's Bankruptcy Schedules that the claim is disputed; or

    ii. no Proof of Claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

4

2. Delay of Distribution on Disputed Claim. No distribution will be made on account of a Disputed Claim, unless such claim is allowed by a final non-appealable order.

3. Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

4. As of the filing of the Plan, the Debtor identifies the following claims as disputed and reserves the right to supplement this list within the time period provided by the Plan:

   a. Proof of Claim 11 filed by the IRS; and
   b. Proof of Claim 28 filed by Caliber Jet Charter, LLC.

## ARTICLE VI
## TRUSTEE COMPENSATION

The Subchapter V Trustee shall be paid for services rendered in this case as an Administrative Expense Claim under § 503(b)(2) entitled to priority under § 507(a) of the Bankruptcy Code and pursuant to Article IX of this Plan. All fees and expenses requested by the Trustee are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Moreover, to the extent the Subchapter V Trustee hires court-approved professionals, those professionals' expenses are similarly subject to court approval prior to payment as an administrative expense.

## ARTICLE VI(A)
## APPOINTMENT OF LIQUIDATING TRUSTEE AND
## CREATION OF LIQUIDATION TRUST

Confirmation of the Plan shall result in the creation of a Liquidation Trust. The Debtor proposes that Yann Geron, SubChapter V Trustee herein, serve as the Liquidating Trustee. The Liquidating Trustee shall receive the Debtor's cash proceeds, the Buyer Note, and all causes of action. The Liquidating Trustee shall retain $25,000 from the first payment of $50,000 made by the Reorganized Debtor to fund post-confirmation costs of administration. The Liquidating Trustee shall have the full power to bring any causes of action, settle any causes of action, file any post-confirmation reports and enforce the Buyer Note.

## ARTICLE VII
## ATTORNEY COMPENSATION

The Debtor's Counsel shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 503(b)(1) entitled to priority pursuant to § 507(a) of

the Bankruptcy Code and Article IV of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VIII
## SOURCE AND MANNER OF PLAN PAYMENTS

*A. Source of Plan Payments*

Upon confirmation of this Plan, the Reorganized Debtor will pay $50,000 and provide the Buyer Note to the Liquidating Trustee. Such payments shall not be derived from the commercial operations of the Reorganized Debtor's business.

*B. Manner of Payments to Creditors*

The Liquidating Trustee shall retain $25,000 of the initial $50,000 payment from the Reorganized Debtor to fund post-confirmation costs of administration. The balance shall be distributed to Allowed Administrative Claims. After Allowed Administrative Claims are paid in full, including pre-confirmation fees of the SubChapter V Trustee and his professionals, the Liquidating Trustee shall make payments in accordance with Article IX.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS, PAYMENTS, AND PRIORITIES

*A. Priority of Payments Under the Plan*

Payments to creditors shall be distributed according to the priorities indicated hereby:

1. Second, holders of Administrative Expense Claims under §§ 507(a)(2) and (3) shall be paid in full prior to the payment of all other claims, subsequent to section 1, above.

2. Third, holders of Priority Tax Claims under § 507(a)(8) shall be paid in full prior to the payment of all other claims, after payment of the foregoing claims.

3. Fourth, holders of all other claims entitled to priority under § 507(a) shall be paid in full prior to the payment of allowed general unsecured claims.

4. Fifth, after payment of the foregoing claims, sums disbursed by the Liquidating Trustee shall be paid to holders of general unsecured claims on a pro rata basis.

## B. *Payments Made Directly to Creditors*

The Liquidating Trustee will make all disbursements under the Plan directly to creditors. Therefore, even in the event that this Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code as a non-consensual plan, the SubChapter V Trustee shall not make payments to creditors under the Plan pursuant to § 1194(b) of the Bankruptcy Code.

# ARTICLE X
# MEANS FOR IMPLEMENTATION OF THE PLAN

## A. *Generally*

1. The Plan will be funded by a $50,000 initial payment upon confirmation and the provision of the Buyer Note to the Liquidating Trustee. .

2. Upon the Court's entry of an order confirming the Debtor's Plan, or as soon as practical thereafter, but not later than fourteen (14) days following entry of the order, the pre-petition membership interests of the Debtor shall be cancelled.

3. Simultaneously therewith, the Reorganized Debtor shall issue new membership interests to the Purchaser whereby the Purchaser shall become the sole owner of the Reorganized Debtor, holding 100% of its membership interests.

## B. *Execution of Documents*

Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

## C. *Retention and Enforcement of Claims*

Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553, thereof.

*D. Treatment of Executory Contracts*

To the extent that any unexpired lease or executory contract of the Debtor has not been dealt with prior to the this Plan's proposal, nor dealt with under this Plan, such unexpired leases or executory contracts shall be deemed rejected according to the applicable provisions of the Bankruptcy Code.

## ARTICLE XI
## REQUEST FOR CONFIRMATION

*A. Request for Confirmation Pursuant to 1191(a).*

The Debtor believes that the Plan as proposed meets the requirements for confirmation under 1191(a) of the Bankruptcy Code and hereby requests confirmation of the Plan.

*B. Alternative Request for Confirmation Pursuant to 1191(b).*

In the event that the Court finds that the requirements for confirmation under § 1191(a) have not been met, the Debtor represents that the Plan as proposed meets the requirements for confirmation under §1191(b) of the Bankruptcy Code.

## ARTICLE XII
## FINANCIAL PROJECTIONS, PLAN FUNDING AND ANALYSIS

*A. Liquidation Analysis – Best Interest of Creditors*

Pursuant to §§ 1129(a)(7)(A)(ii) and 1190(1)(B), the Debtor has prepared a liquidation analysis which demonstrates that confirmation of this Plan is in the best interest of all creditors. The following chart asserts the amount, if any, of returns to creditors were this case converted to a liquidation under Chapter 7 of Title 11 of the United States Code:

| *Assets* | |
|---|---|
| Tangible Personal Property – Office Furniture | $47,012.76 |
| Intellectual Property – FAA Certificate | $0 (non-fungible) |
| **VALUE OF ASSETS AVAILABLE FOR DISTRIBUTION** | **$47,012.76** |
| | |
| *Liabilities and Obligations* | |
| Chapter 7 Administrative Expenses | ($1,000) |
| Plan Administrative Expenses – Professional Fees | ($50,000) |
| Priority Wage Claims – 507(a)(4) | ($28,010.36) |
| Priority Tax Claims – 507(a)(8) | ($1,026,532.49) |
| **TOTAL LIABILITIES** | **($1,105,542.85)** |
| | |

| LIQUIDATION PROCEEDS | ($1,058,530.09) |
|---|---|
| | |
| **NET RETURN TO GENERAL UNSECURED CREDITORS** | $0.00 |

*B. Feasibility*

Pursuant to § 1129(a)(11), the Debtor asserts the business of the et will not be liquidated, nor will there be a need for further financial reorganization.

*C. Income Projections, Plan Funding, Ability to Make Payments*

1. Pursuant to the requirements of § 1190(1)(C), attached hereto and incorporated herein as **Appendix 2** is an exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code, (ii) the details supporting and the assumptions under which said projections were made, (iii) the source and value of funds and assets available for distribution under the Plan, and (iv) a summary of payments under this Plan. The information contained in **Appendix 2** demonstrates the ability and likelihood of the Liquidating Trustee to make all payments contemplated by the Plan.

2. Pursuant to § 1191(c)(2)(B), in the event that a consensual plan of reorganization cannot be confirmed under § 1191(a) but is confirmed under § 1191(b), the Debtor represents that the value of the property to be distributed under this Plan is not less than the Debtor's projected disposable income for the term of the Plan pursuant to §1191(c)(2)(B). The income projections demonstrate that the business is not currently profitable, and may take several years to become profitable, especially now due to the impact that the COVID-19 pandemic has had on the airline industry. The Plan provides for the full payment of secured, administrative, and priority unsecured claims in accordance with the Bankruptcy Code. In addition, the Plan proposes a return to general unsecured creditors of approximately $25,000.00.

*D. Payment Defaults – Adequate Remedies*

Pursuant to § 1191(c)(3)(B), the Debtor proposes the following remedy should there by a default in payment:

Any creditor asserting a default in payments to be made under this Plan shall notify the Debtor not less than three (3) days after the occurrence of such default. If, after fourteen (14) days following actual receipt by the Debtor of such notice, the Debtor has not cured such default, then upon notice and an opportunity for hearing, the Debtor will request that the Court hold a status conference to discuss the possibility of conversion, dismissal, or removal of the debtor-in-possession.

# ARTICLE XIII
# MODIFICATION, AMENDMENT, WITHDRAWAL

Only the Debtor may alter, amend, or modify the Plan before or after the Confirmation Date, as provided in § 1193 of the Bankruptcy Code.

*A. Effect of Confirmation on Modification.*

Confirmation of the Plan shall mean that all modifications or amendments to the Plan thereafter are effective without the need for additional approval or disclosure.

*B. Debtor's Right to Revoke or Withdraw Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to Confirmation.

# ARTICLE XIV
# PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as provided in this Plan or the Order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Liquidating Trustee as of the Effective Date, free and clear of any claim or interest of any creditor provided for by this Plan.

# ARTICLE XV
# CONFIRMED PLAN BINDING ON DEBTOR AND CREDITORS

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

# ARTICLE XVI
# DISCHARGE

The Debtor shall become eligible for a discharge under § 1141(d) of the Bankruptcy Code upon confirmation of a plan confirmed pursuant to § 1191(a). Alternatively, if the Debtor's plan of reorganization is confirmed pursuant to § 1191(b) of the Bankruptcy Code, then upon the final payment and application to the Court by the Debtor, the Debtor shall be

eligible to receive a discharge under 1192 of the Bankruptcy Code.

## ARTICLE XVII
## GOOD FAITH

The Debtor has proposed this Plan in good faith and not by any means forbidden by law. The Plan complies with all applicable provisions of the Bankruptcy Code, as well as the Plan proponent, the Debtor, in proposing this Plan.

## ARTICLE XVIII
## MISCELLANEOUS

A. *Definitions and Rules of Construction.* The definitions and rules of construction set forth in 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

B. *Effective Date of Plan.* The effective date of the Plan shall be the date upon which the first bi-annual dividend is due to be disbursed.

C. *Severability.* If any provision of this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision in the Plan.

D. *Appendices.* The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

E. *Captions.* The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

F. *Controlling Effect.* Unless a rule of law or procedure is supplied by federal law, the laws of New York State govern any controversies arising under this Plan and any and all agreements, documents, and instruments executed in connection with this Plan, except as explicitly provided in this Plan.

G. *Role of the Trustee Following Confirmation*

1. Because the Plan proposes to pay creditors directly, the Subchapter V trustee's services with regard to payment or retention of payments to be disbursed are not necessary.

2. The Plan does not propose to commit any future earnings of the Debtor to generate a return for creditors because creditors will be paid from sources other than the business operations of the Debtor. Therefore, § 1190(2) of the Bankruptcy Code is inapplicable.

3. Pursuant to § 1183(c)(1), upon notice to the Court of substantial consummation of the confirmed Plan, the Subchapter V trustee's services shall terminate immediately.

*H. Payment Trust Account.* Each monthly payment made by the Debtor to fund the bi-annual dividend shall be deposited in an FDIC insured creditor trust account that complies with all applicable laws, rules and regulations that may apply to such accounts.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

# APPENDIX 1

## See Article V of Plan

[CLASSIFICATION AND TREATMENT OF CLAIMS]

# APPENDIX 2

[INCOME PROJECTIONS]