**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CIARDI CIARDI & ASTIN**
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA 19103
(215) 557-3550

**In re:**

**All In Jets, LLC d/b/a JetReady,**

                    **Debtor.**

Case No.  20-11831

Judge: Michael E. Wiles

Chapter 11, Subchapter V, Small
Business Debtor Reorganization

Formatted: Font: 12 pt

Formatted: Font: 12 pt

Formatted: Centered

Formatted: Font: 12 pt

On August 9, 2020 (the "Petition Date"), ALL IN JETS, LLC d/b/a JETREADY, the

debtor in the above-captioned case and debtor-in- possession (the "Debtor"), filed for chapter

11 bankruptcy protection. The Debtor proposes the following ~~Third~~Fourth Amended Plan (the

"Plan") under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy

Code").

**ALL CREDITORS AND EQUITY SECURITY HOLDERS SHOULD REFER
TO ARTICLE V OF THIS PLAN FOR INFORMATION REGARDING THE
PRECISE TREATMENT OF THEIR CLAIMS OR INTERESTS. YOUR RIGHTS
MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND
DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO
NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.) THIS PLAN
IS A PROPOSAL BY THE DEBTOR AND SUBJECT TO COURT APPROVAL
AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING. YOU ALSO
HAVE THE RIGHT TO FILE AN OBJECTION TO CONFIRMATION OF THE
PLAN. YOU WILL BE PROVIDED WITH AN ORDER FROM THE BANKRUPTCY
COURT SETTING IMPORTANT DATES AND DEADLINES RELATIVE TO
APPROVAL OF THIS PLAN.**

**Formatted:** Font: Bold

1

## DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

### ARTICLE I

## BACKGROUND, HISTORY OF THE DEBTOR'S BUSINESS, AND PRE-PETITION FINANCIAL INFORMATION

### A. *Nature and History of the Debtor's Pre-Petition Business or Commercial Activities*

The Debtor is a Florida Corporation, with an address of 655 Madison Ave., 20th Floor, New York, New York 10065. The Debtor is a private jet charter operator and aircraft management company that offered flights worldwide with a floating charter fleet of heavy to midsize jets including Gulfstream GIVSPs, Gulfstream GIVs, Challenger 601s and Hawker 800 models.

### B. *Legal Structure and Ownership of the Debtor*

The Debtor is a limited liability company organized under the State laws of Florida. Seth Bernstein is the 100% owner of all membership interests of the Debtor. Seth Bernstein is the only managing member of the Debtor and holds all offices of the Debtor.

### C. *Events Leading to the Debtor's Bankruptcy Filing and the Plan Process*

The Debtor's primary asset is its Part 135 Certificate and the corresponding Standard Operating Procedures, manuals and protocols as well as employees maintained by the Debtor that are attendant to the Part 135 Certificate. The Debtor has approximately $5,000,000 in unsecured debt and ceased jet charter and aircraft management operations prior to the Petition Date.

The Debtor believes its Part 135 Certificate to be worth approximately $600,000 based upon its knowledge of the market and the sale process it instituted in this bankruptcy case with the filing of its motion for authority to sell certain assets free of liens, claims, and encumbrances (the "Sale Motion") on December 21, 2020. *See* Docket No. 47. Indeed, prior to the Petition Date, the Debtor located an entity willing to take over management and ownership of the Debtor through the bankruptcy process. However, this potential buyer backed out after the filing of the Debtor's initial plan. The Debtor filed the Sale Motion to reflect a new buyer and a bidding structure agreed upon by parties in interest. *See* Docket No. 47. A new buyer, Aviation House Investments, LLC, emerged during the bidding process and was qualified by the Debtor. However, prior to the auction, the FAA, through the United States Attorney's Office, objected to the proposed sale of the Part 135 Certificate. The Debtor filed the Second Amended Plan, therefore, to appease both the FAA and Aviation House Investments, LLC. Unfortunately, the FAA was ultimately unable to certify Aviation House Investments, LLC because it is based outside of the United States. This entity therefore withdrew from contention for the Debtor's assets and its deposit was subsequently returned by the Debtor. ~~Incredibly, the Debtor located a new plan funder last week. Pursuant to the Plan, funding will come from of the cancellation of all existing membership interests of the Debtor and the issuance of new interests to Air Charter Holdings, LLC ("ACH") in return for funding the distribution under the Plan in the amount of $650,000 (the "Purchase Price"). ACH~~

2

has agreed to place a deposit of $75,000 in escrow and has already been certified by the FAA as it already owns a Part 135 Certificate. Upon confirmation, ACH will own the Debtor and fund the Plan distributions. Air Charter Holdings, LLC ("ACH") subsequently emerged as a potential buyer and the Debtor filed the Third Amended Plan to highlight ACH's proposal as well as outstanding issues with the IRS and the FAA. Unfortunately, the proposal outlined in the Third Amended Plan was not acceptable to several of the Debtor's creditors. In the interim, the Debtor obtained a new proposed plan funder, Sea to Sky Air, Inc. d/b/a Flying Zebra ("Zebra") and circulated information related to this proposed plan funder's history, current operations, and financials to all interested and/or objecting parties (to confirmation of the Fourth Amended Plan).

*D. Definitions Specific to the Plan and the Liquidation Trust, defined infra, and Liquidating Trustee, defined infra.*

**"Allowed"** The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed Unsecured Claim") shall mean one which (a) is listed in the bankruptcy schedules or list of equity security holders (including any amendments thereto) filed in this case as of the confirmation date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor; (b) is set forth in a Proof of Claim or Interest properly filed in this case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof, and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

**"Allowed Claims"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its Schedules as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date.

**"Administrative Claims"** means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the chapter 11 case allowable under § 503(b) of the Bankruptcy Code and entitled to priority under § 507(a)(1) of the Bankruptcy Code.

**"Beneficiaries"** means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

**"Causes of Action"** means a[i]all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bids, specialties,

3

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims,
reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination, or other actions of the Debtor (unless the context expressly states that such Causes of Action belong to the another Entity entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in
law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect,
derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

**"Claims"** means a claim against the Debtor within the meaning of Section 101(5) of the Bankruptcy Code and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

**"Confirmation"** means the entry of the Confirmation Order.

**"Confirmation Order"** means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**"Court"** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Debtor's chapter 11 case.

**"Creditors"** means any Holder of a Claim against the Debtor as specified in Section 101(10) of the Bankruptcy Code.

**"Disputed Claims"** means any Claim marked as "disputed" on the Debtor's schedules of assets and liabilities and statement of financial affairs in addition to any Claim highlighted in the Plan as "disputed".

**"Distributions"** means disbursements to creditors from the Liquidation Trust pursuant to the terms of the Plan.

**"Distribution Record Date"** means the close of business on the Business Day immediately preceding the Effective Date.

**"Effective Date"** means the date upon which the Confirmation Order becomes a Final Order.

**"Estate"** means the estate of the Debtor in the Chapter 11 Case created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Debtor's chapter 11 case.

**"Final Distribution"** means the last Distribution made from the Liquidation Trust pursuant to the terms of the Plan and the Liquidating Trust Agreement.

4

**"Final Order"** means an order or judgment of the Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

**"Initial Distribution"** and **"Initial Distribution Date"** shall mean the first distribution by the Liquidating Trustee to a Beneficiary which shall occur no earlier than sixty (60) days after the Liquidating Trustee has paid all Class 1, Administrative and Priority Claims and has sufficient funds to make a meaningful Distribution to such Beneficiaries with Class 3 or 3A Claims as their interests may appear. A **"Subsequent Distribution"** and **"Subsequent Distribution Date"** shall mean the Distribution(s), if any, which occur after the Initial Distribution.

**"Litigation"** means the interest of the Estate, the Debtor, or the Liquidating Trustee, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtor or the Liquidating Trustee, as applicable. Litigation includes, without limitation, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code, to the extent not sold or released as part of the Sale Agreement; (ii) for the turnover of property to the Debtor or the Liquidating Trustee, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtor or the Liquidating Trustee, as applicable; (iv) for compensation for damages incurred by the Debtor; and (v) equitable subordination actions against Creditors.

Formatted: Font: Bold

**"Liquidation Trust"** means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries, which shall hold the proceeds generated by the transaction proposed in the Plan together with any and all other assets of the Debtor, including all Causes of Action and the proceeds thereof.

**"Liquidating Trustee"** means Yann Geron.

**"Liquidating Trust Agreement"** means the agreement, substantially in the form annexed to the Plan as Exhibit "B," as it may be modified from time to time.

**"Liquidation Trust Assets"** means the assets placed in the care of the Liquidation Trust and the Liquidating Trustee including the proceeds from the transaction contemplated in the Plan related to the Part 135 Certificate and all of the Debtor's assets, cash, and all Causes of Action the Debtor holds or may hold against any entity or individual.

**"Liquidating Trust Assets Account"** means a bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assts and- Trust
Proceeds to be distributed under the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets. The Liquidating Trust Assets Account will be initially funded by the Debtor or Liquidating Trustee, as applicable, on or immediately after

5

the Effective Date with the available cash.

**"Liquidation Trust Beneficiaries"** means holders of Allowed Claims entitled to receive Distributions from the Liquidation Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

**"Liquidation Trust Interests"** means the non-transferable interests in the Liquidation Trust, distributions of which will be made to holders of Allowed Secured Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Unsecured Claims in accordance with Article V hereof.

**"Class"** means a category of holders of Claims or equity interests, as set forth in Article V of the Plan.

**"Priority Tax Claims"** shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(8) of the Bankruptcy Code.

**"Priority Non-Tax Claims"** shall mean a Claim or a portion of a Claim for which priority is asserted under § 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

**"Pro Rata"** means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

**"Reorganized Debtor"** means the Debtor on and after the Effective Date.

**"Secured Claims"** shall mean a Claim that is (a) secured by a valid, perfected and enforceable Lien on Assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such Assets; or (b) a Claim which is specified herein as an Allowed Secured Claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

**"Security Interest"** means the security interest in all of the assets of the Reorganized Debtor to be granted to the Liquidation Trust on the Effective Date to secure all of the obligations under the Note pursuant to a security agreement to be entered into between the Reorganized Debtor and the Liquidation Trust.

**"Subchapter V Trustee"** means Yann Geron, the Subchapter V Trustee who was appointed by the United States Trustee under Section 1183(a) of the Bankruptcy Code.

**"Unsecured Claims"** means any Claim, whether or not disputed, liquidated or contingent, including a Rejection Claim or a Deficiency Claim arising out of any default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than an Administrative Claim, Priority Non-Tax Claim, Priority Tax Claim or Secured Claim.

6

Capitalized Terms not defined in the Plan shall have the meaning set forth in the Bankruptcy Code or the Liquidating Trust Agreement.

*E. Summary of Debtor's Historical Financial Condition*

1. Asset Summary

| Fixed Assets | $47,012.76 |
|---|---|
| Intellectual Property | $600,000.00 |
| Cash and Deposits | $0.00 |
| Accounts Receivable | $0.00 |
| **TOTAL** | **$647,012.76** |

2. Liability Summary

| Secured Debt | $0.00 |
|---|---|
| Priority Unsecured Debt | $1,054,542.85[1]$644,861.44 |
| Nonpriority Unsecured Debt | $5,228,671.97 |
| **TOTAL UNSECURED DEBT** | **$5,688,673.67** |

3. Revenue History

| 2017 | $860,277.56 |
|---|---|
| 2018 | $8,732,524.70 |
| 2019 | $7,284,473.76 |
| 2020 | $2,689,943.44 |

[1] The IRS's priority tax claim (POC #11-1) is disputed. The Debtor asserts that the correct amount of the claim is $160,000.00 and has filed all necessary tax returns and provided all required information to the IRS to substantiate this position.

7

## ARTICLE II
## SYNOPSIS OF PLAN

~~This Plan proposes that the Debtor cancels all of its existing equity and reissues 100% of new equity to ACH upon Confirmation of the Plan. Pursuant to the terms of the Plan, post-confirmation, the Debtor will pay $650,000 with $75,000 distributed to the Liquidating Trustee at Confirmation plus a note for $575,000 (the "ACH Note")~~ The Plan proposes funding from two sources: (a) funding from the Debtor's existing member, Seth Bernstein, and (b) Zebra. The Debtor's existing member shall infuse $120,000 into the Debtor upon Confirmation of the Plan. This $120,000 shall be used to pay administrative expenses of the Debtor's professionals, the Subchapter V Trustee, and the Sub-chapter V Trustee's professionals incurred through the Effective Date. Any unused amount remaining after payment of those administrative expenses in full shall be paid to the Liquidation Trust. The second source of plan funding will be a payment of $650,000 (the "Purchase Price") made up of $75,000 in cash paid on the Effective Date from Zebra and a promissory note in the face amount of $575,000 issued by the Reorganized Debtor as described more fully below.

Pursuant to the terms of the Plan, on the Effective Date ,$75,000 in cash will be distributed to the Liquidation Trust and the Reorganized Debtor will deliver a note in the principal amount of $575,000 (the "Note") payable to the Liquidation Trust secured by a UCC-1 Security Interest in all of the Debtor's assets and paid as follows: $50,000 on the 6 month anniversary of the Effective Date and then 18 equal monthly installments sufficient to pay the balance of the ~~note~~Note in full with interest at three percent (~~3%~~3%) per annum. The Note shall be in the form annexed to the Plan as Exhibit "C." The Confirmation Order shall confirm that the Reorganized Debtor owns its assets ~~and~~, including the Part 135 Certificate, free and ~~clean~~clear of all liens, claims, and encumbrances except for the Security Interest granted to the Liquidating Trust.

Formatted: Justified, Indent: First line: 0.5"

~~The~~After the filing of this case, Caliber Jet Charter, LLC ("Caliber Jet") interposed a claim of ownership relating to the Part 135 Certificate (the "Caliber Jet Claim"). To allow the Plan to go forward without having to resolve the Caliber Jet Claim prior to Confirmation, the Caliber Jet Claim is being resolved with respect to the Debtor such that the claim of Caliber Jet to the Part 135 Certificate shall attach to the Purchase Price and become a claim against these funds, which are determined by the Court to be attributable to the Part 135 Certificate prior to Confirmation. This resolution is without prejudice to the rights, defenses or objections by the Liquidating Trustee or any Beneficiary of the Liquidation Trust to the Caliber Jet Claim and its assertion that it owned the Part 135 Certificate, which claim will be resolved in accordance with procedures to be determined after Confirmation of the Plan.

Further, the Plan proposes that the ~~membership~~existing equity interests of the Debtor ~~are sold to ACH for consideration to be paid under the Plan of $650,000, cancelling existing equity and issuing~~will be cancelled and that new equity interests will be issued to ~~ACH~~Zebra in return for receipt of the Purchase Price.

Since the filing of the petition, the Debtor, its management, and Debtor's counsel have sought to propose and confirm a consensual plan of reorganization. Zebra has presented both the opportunity and the means for the Debtor to do so. The Chief Pilot and Co-Owner of Zebra is

Glenn B. Allyn. Mr. Allyn provides an overview of his background, Zebra's operations and current ownership of varying FAA part 135 certificates and substantiates Zebra's ability to fund the Plan in a letter to the Court attached hereto as Exhibit "A".

### ARTICLE III
### PLAN TERM

The term of this Plan begins on the date that this Plan is confirmed by the Bankruptcy Court and ends on the twenty-fourth (24th) month following that date.
Omitted.

### ARTICLE IV
### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, claims of a kind described by § 507(a)(2), (3) and (8) have not been separately classified by the Plan. Treatment of those claims are described below:

*A. Administrative Priority Claims*

1. <u>Administrative Priority Claims Paid in Full</u>. Unless the holder of an Allowed Administrative Priority Claim separately agrees to different treatment, holders of Allowed Administrative Priority Claims shall receive cash, as of the effective date, of a value equal to the allowed amount of each such claim. The Debtor estimates that its professional fees and other administrative expenses total approximately $100,000120,000. These claims will be paid in full from the cash infusion from existing equity.

2. <u>Allowance of Administrative Claims</u>. All parties claiming an administrative expense priority under § 507(a)(2) of the Bankruptcy Code, whether secured or unsecured, such claims that are treated under this Plan shall not be obligated to file an application with the Bankruptcy Court to approve their administrative expense priority status. The parties described in the foregoing include the Subchapter V trusteeTrustee, and Debtor's Counsel. All other parties claiming an administrative expense priority shall be required to file an application with the Bankruptcy Court to approve their asserted administrative expense priority no later than thirty (30) days after the Confirmation of this Plan.

*B. Priority Tax Claims*

Unless the holder of a priority tax claim under § 507(a)(8) of the Bankruptcy Code separately agrees to different treatment of their claim, holders of such claims shall have their claims treated in accordance with § 1129(a)(9)(C) of the Bankruptcy Code. The Debtor is aware of only the proof of claim filed by the IRS in the amount of $1,054,542.85 and disputesdisputed the amount claimed therein. *See* Proof of Claim 11. The Debtor submitsOn September 3, 2021, the IRS filed amended proof of claim 11-2 in the total amount of this claim is $460,000$795,531.64 and

9

claiming $644,861.44 as priority. *See* Proof of Claim 11-2. The Debtor has no further objection to the amended proof of claim filed by the IRS. This claim will be paid from the assets of the Liquidating Trust in accordance with § 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE V
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Debtor has classified all claims and interests in accordance with § 1122 and § 1123 of the Bankruptcy Code. For a full list of creditors in this case, the Debtor refers to its previously filed schedules and the claims register with the Bankruptcy Court.

A. *Summary of Proposed Classification and Treatment of Claims and Interests*

1. Class 1 consists of Priority Wagepriority wage Claims under § 507(a)(4) of the Bankruptcy Code. Holders of Class 1 claims shall be paid cash, on the effective date of the Plan, of a value equal to the allowed amount of each such claim. Holders of Class 1 claims are considered unimpaired by the Plan and are therefore conclusively presumed to have accepted the Plan pursuant to § 1126(f). Therefore, holders of Class 1 claimsClaims are not entitled to vote to accept or reject the Plan. The Debtor's interest holder has paid all priority wage Claims.

Formatted: Justified placed in right margin as formatting annotation.

2. Class 2 consists of all Allowed General Unsecured Claims. The Plan proposes to pay holders of Class 2 the holder of the Caliber Jet Claim, identified as claim number 28 in the claims their pro rata share of whatever remains from the $650,000 distribution after payment of administrative claimsregister. Pursuant to the Plan, the Court will determine the nature, type, priority wages and amount of the Caliber Jet Claim, including whether Caliber Jet has any right to priority taxes plus the net proceeds of any causesover other class of Allowed Claims, or whether, for example, it should be treated on a *pari passu* basis with any other class of Claims or should be subordinated to any class of action brought by the Liquidating Trustee.Claims, based on a procedure to be determined by stipulation with the Liquidating Trustee or, if needed, by motion practice with the Court. The rights, claims and defenses of all of the Debtor's Creditors, the Liquidating Trustee and Caliber Jet are reserved and preserved on this issue. Holders of Class 2 claimsClaims are considered impaired pursuant to § 1124(1) of the Bankruptcy Code. Therefore, holders of Class 2 claimsClaims are entitled to vote to accept or reject the Plan.

Class 3

3. Class 3 consists of all Allowed General Unsecured Claims. The Plan proposes to pay holders of Class 3 Claims their Pro Rata share of whatever remains from the $650,000 plus the net proceeds of any Causes of Action brought by the Liquidating Trustee, after payment of Administrative Claims, Class 2 Claims as determined by the Court, Non-Priority Tax Claims (including priority wages)

and Priority Tax Claims. Holders of Class 3 Claims are considered impaired pursuant to § 1124(1) of the Bankruptcy Code. Therefore, holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

3.4.Class 4 consists of the pre-petition membership interests of the Debtor held by Seth Bernstein. The Plan proposes to cancel those interests upon Confirmation. Holders of Class 34 interests will not receive any property or be entitled to share in any disbursements under the Plan on account of such interests. Accordingly, holders of Class 3 interests are considered impaired, and are deemed not to have accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.

Formatted: Bullets and Numbering

*B. Disputed Claims*

1. Definition. A ~~disputed claim~~"**Disputed Claim**" is a claim that has not been allowed or disallowed by a ~~final non-appealable order~~Final Order of the ~~Bankruptcy~~ Court and either:

    i.    is a Proof of Claim that has been filed or deemed filed, and to which the Debtor or another party in interest has filed an objection, and/or has indicated on the Debtor's Bankruptcy Schedules that the claim is disputed; or

    ii.   no Proof of Claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

2. Delay of Distribution on Disputed Claim. No distribution will be made on account of a Disputed Claim, unless such claim is allowed by a ~~final non-appealable order~~Final Order.

3. Settlement of Disputed Claims. The Debtor or the Liquidating Trustee will have the power and authority to settle and compromise a ~~disputed claim~~Disputed Claim with ~~court~~Court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

4. As of the filing of the Plan, the Debtor identifies the following ~~claims~~Claims as disputed and reserves the right to supplement this list within the time period provided by the Plan:

    a.    Proof of Claim ~~11 filed by the IRS; and~~
    b.a. ~~Proof of Claim~~No. 28 filed by Caliber Jet ~~Charter, LLC~~.

## ARTICLE VI
## TRUSTEE COMPENSATION

The Subchapter V Trustee shall be paid for services rendered in this case as an

11

Administrative Expense Claim under § 503(b)(2) entitled to priority under § 507(a) of the Bankruptcy Code and pursuant to Article IX of this Plan. All fees and expenses requested by the ~~Sub Chapter~~ Sub Chapter V Trustee are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Moreover, to the extent the Subchapter V Trustee hires ~~court~~Court-approved professionals, those professionals' expenses are similarly subject to ~~court~~Court approval prior to payment as an administrative expense.

## ARTICLE VI(A)
## APPOINTMENT OF LIQUIDATING TRUSTEE AND
## CREATION OF LIQUIDATION TRUST

Confirmation of the Plan shall result in the creation of a Liquidation Trust. The Debtor proposes that Yann Geron, ~~SubChapter~~the Subchapter V Trustee herein, serve as the Liquidating Trustee. The Liquidating ~~Trustee~~Trust, as that term is defined in the Plan, shall receive the Debtor's cash proceeds, the ~~Buyer~~Note, all Liquidation Trust Assets, the Security Interest and all ~~causes~~Causes of ~~action~~Action. The Liquidating Trustee shall retain $25,000 from the first payment of $75,000 made by the Reorganized Debtor to fund post-confirmation costs of administration. The Liquidating Trustee shall have the full power to bring any ~~causes~~Causes of ~~action~~Action, settle any ~~causes~~Causes of ~~action~~Action, file any post-confirmation reports and enforce the ~~Buyer~~Note and Security Interest.

J.    Formation of the Liquidation Trust and Liquidation Trust Committee

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidating Trust Agreement, attached hereto as Exhibit "B", for the purpose of, *inter alia,* (a) administering the Liquidation Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any ~~Entity~~entity or person, and (d) making all Distributions provided for under the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to ~~Cash~~cash the Liquidation Trust Assets, and make timely Distributions to the Debtor's creditors, and not unduly prolong the duration of the Liquidation Trust. Neither the Liquidation Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

An advisory committee (the "Liquidating Trust Committee") consisting of the three largest Liquidating Trust Beneficiaries as of Confirmation by Claim amount, and thereafter as determined immediately following each Liquidating Trust distribution who are willing to serve on the Liquidating Trust Committee by inviting the three largest creditors by claim amount at any given moment in time to sit on the Liquidating Trust Committee, shall be formed for the purposes and upon the terms set forth more fully in the

12

| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |
| Formatted: Font: 12 pt |

Liquidating Trust Agreement. The Liquidating Trustee shall select the members of the Liquidating Trust Committee. No compensation shall be paid for any services provided by any individual member nor shall members be reimbursed for counsel or professional fees related to their service on the Liquidating Trust Committee.

2.    Rights and Powers of the Liquidating Trustee.

The Liquidating Trustee shall be deemed the Debtor's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidation Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidation Trust by making distributions pursuant to the Plan; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtor holds or may hold against any Entityentity or person; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for disputed claimsDisputed Claims that may be required; (6) object to the disputed claimsDisputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; and (7) employ and compensate professionals and other agents, including, without limitation, existing Professionalsprofessionals employed by the DebtorSubchapter V Trustee in accordance with the Liquidating Trust Agreement or the Plan, provided, however, that any such compensation shall be made only out of the Liquidation Trust Assets, to the extent not inconsistent with the status of the Liquidation Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

3.    Fees and Expenses of the Liquidation Trust

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidation Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

4.    Litigation.

Except as otherwise provided in this Plan, all Litigation is retained, vested in the Liquidation Trust and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee. To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtor, will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the

13

Debtor pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

     5.     Full and Final Satisfaction.

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the ~~Holders~~holders of Allowed Claims according to the provisions of the Plan. Upon the Effective Date, all ~~Debts~~debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidation Trust shall have no liability on account of any Claims or ~~Equity Interests~~equity interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidation Trust; provided, however, that nothing contained in this Section VI(A) of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code Section 1141(d).

     6.     Distribution Procedures.

a)     Distribution Dates. The Liquidating Trustee shall make Distributions to ~~Holders~~holders of Claims as provided in Article V of the Plan. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in its sole discretion, make a full or partial Pro Rata Distribution to the ~~Holders of Class 2 Unsecured Claims~~Liquidation Trust Beneficiaries on the Initial Distribution Date or a Subsequent Distribution Date.

b)     Subsequent Distributions. Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidation Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution.

c)     Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the ~~Holders~~holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the ~~Entity~~entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

14

Formatted: Font: 12 pt
Formatted: Font: Times New Roman
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt
Formatted: Font: 12 pt

d)     Manner of Cash Payments Under the Plan or Liquidating Trust Agreement. Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

e)     Time Bar to Cash Payments by Check. Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months from the Effective Date or 90 days after the date of issuance thereof. After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidation Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

## ARTICLE VII
## ATTORNEY COMPENSATION

The Debtor's Counsel, the Subchapter V Trustee, and the Subchapter V Trustee's professionals shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 503(b)(1) entitled to priority pursuant to § 507(a) of the Bankruptcy Code and Article IV of this Plan. All fees and expenses requested by the Debtor's attorney any of the foregoing professionals are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VIII
## SOURCE AND MANNER OF PLAN PAYMENTS

*A. Source of Plan Payments*

Upon confirmation of this Plan, the Reorganized Debtor will pay $75,000 and provide the ACH Note to the Liquidating Trustee. Such payments shall not be derived from the commercial operations of the Reorganized Debtor's business.

        *(i)     Capital Infusion from Seth Bernstein*

Conditioned upon the confirmation of this Plan and the execution of the Note, Seth Bernstein shall infuse $120,000 into the Debtor, within ten (10) days of the entry of the Confirmation Order, which will be used to make payments to the Administrative Claimants identified in Articles IV and VII. To the extent the Liquidating Trustee or the Liquidation Trust

15

brings any Cause of Action against Mr. Bernstein, he shall be permitted to assert, subject to any objection or defenses of the Liquidating Trustee, the $120,000 capital contribution as a defense to the extent applicable. Mr. Bernstein and the Liquidating Trustee reserve and preserve all arguments, claims and defenses with regard to any Cause of Action.

      (ii)   *Zebra Cash Infusion and Note*

     Zebra has paid $75,000 to the Debtor which is held in the IOLTA account of Debtor's counsel. On the Effective Date in exchange for (a) all new membership interests in the Reorganized Debtor, (b) confirmation that all existing membership interests are canceled, and (c) entry of the Confirmation Order providing that the Reorganized Debtor and its assets are free and clear of all liens, claims, and interests as of the Effective Date other than the Security Interest of the Liquidating Trust in all of the Reorganized Debtor's assets, the $75,000 shall be paid to the Liquidating Trustee for distribution under the Plan, and the Reorganized Debtor shall deliver the Note in the amount of $575,000 and a security agreement in all of the Reorganized Debtor's assets. The Note shall contain the payment terms detailed in Exhibit "C."

### B. Manner of Payments to Creditors

~~The Liquidating Trustee shall retain $25,000 of the initial $75,000 payment from the Reorganized Debtor to fund post confirmation costs of administration. The balance shall be distributed to Allowed Administrative Claims. After Allowed Administrative Claims are paid in full, including pre confirmation fees of the SubChapter V Trustee and his professionals, the Liquidating Trustee shall make payments in accordance with Article IX.~~

The Debtor shall make the payments to administrative creditors from the cash infusion until the Effective Date. After the Effective Date, the Debtor shall deliver the remaining funds to the Liquidating Trustee for use first to pay any unpaid Administrative Claims in Article IV or VII through the Effective Date and the balance for use to make Plan payments. The Liquidating Trustee shall use the Zebra cash infusion and the proceeds from the Note, and any other amounts recovered for the benefit of the Liquidating Trust to the Liquidation Trust Beneficiaries in accordance with the terms of the Liquidating Trust Agreement.

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS, PAYMENTS, AND PRIORITIES

### A. Priority of Payments Under the Plan

~~Payments~~Subject to a determination as to whether any, all or some portion of the assets held by the Liquidation Trust are subject to the Caliber Jet Claim, which funds are referred to herein as "Encumbered Liquidating Trust Assets," payments to creditors shall be distributed according to the priorities indicated hereby:

         1.  ~~Second~~First, holders of Administrative Expense Claims under §§ 507(a)(2) and (3) shall be paid in full prior to the payment of all other ~~claims~~Claims, subsequent to section 1, above.

2. ~~Third~~Second, holders of Priority Tax Claims under § 507(a)(8) shall be paid in full from any Liquidation Trust Assets that are not Encumbered Liquidating Trust Assets prior to the payment of all other ~~claims:~~Claims from such assets, and after payment of the foregoing ~~claims~~Administrative Expense Claims.

3. ~~Fourth~~Third, holders of all other ~~claims~~Claims entitled to priority under § 507(a) shall be paid in full from any Liquidation Trust Assets that are not Encumbered Liquidating Trust Assets prior to the payment of ~~allowed~~Allowed general ~~unsecured claims~~Unsecured Claims.

4. Fourth, to the extent that the Caliber Jet Claim is determined by the Court to have priority over other Claims, the Caliber Jet Claim shall be paid to the extent of and in the amount deemed to have priority, but in the event that the any portion of the Caliber Jet Claim is deemed to be an Unsecured Claim, it shall be treated as set forth below.

~~4.~~5.Fifth, after payment of the foregoing claims, sums disbursed by the Liquidating Trustee shall be paid to holders of ~~general unsecured claims on a pro rata basis~~Allowed Unsecured Claims as provided for the treatment of Class 3 Unsecured Claims under Article V of the Plan.

*B. Payments Made Directly to Creditors*

The Liquidating Trustee will make all disbursements under the Plan directly to ~~creditors~~Creditors. Therefore, even in the event that this Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code as a non-consensual plan, the ~~SubChapter~~Subchapter V Trustee shall not make payments to ~~creditors~~Creditors under the Plan pursuant to § 1194(b) of the Bankruptcy Code.

## ARTICLE X
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. Generally*

1. The Plan will be funded by ~~a~~ the $120,000 cash infusion from Seth Bernstein, the $75,000 initial payment from Zebra upon ~~confirmation~~Confirmation, and the provision of the ~~Buyer~~Note to the ~~Liquidating Trustee~~Liquidation Trust.

2. Upon the Court's entry of an order confirming the Debtor's Plan, or as soon as practical thereafter, but not later than fourteen (14) days following entry of the order, the pre-petition membership interests of the Debtor shall be cancelled.

3. Simultaneously therewith, the Reorganized Debtor shall issue new membership interests to ~~the Purchaser~~Zebra whereby ~~the Purchaser shall~~Zebra become the sole owner of the Reorganized Debtor, holding 100% of its membership interests- in the Debtor free and clear of all liens, claims and interests other than the Security Interest of the Liquidating Trust which secures the Note.

17

4. On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtor holds or may hold against any entity or person, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Liquidating Trust Assets, and make timely Distributions to the Beneficiaries, and not unduly prolong the duration of the Liquidating Trust. Neither the Liquidating Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

## B. Execution of Documents

Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

## C. Retention and Enforcement of Claims and Causes of Action

Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce any and all claimsClaims and Causes of Action of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all Claims and Causes of Action arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 552 and 553, thereof.

## D. Treatment of Executory Contracts

To the extent that any unexpired lease or executory contract of the Debtor has not been dealt with prior to the this Plan's proposal, nor dealt with under this Plan, such unexpired leases or executory contracts shall be deemed rejected according to the applicable provisions of the Bankruptcy Code.

## E. Vesting of Property of Debtor in the Liquidation Trust

Upon the Effective Date, title to all cash and Causes of Action of the Estate of the Debtor

in the Chapter 11 Case shall vest in the Liquidation Trust and shall be retained by the Liquidating Trustee for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action the Debtor holds or may hold against any entity, recoveries, rights to proceeds, and all resulting assets (the "Liquidation Trust Assets") shall vest in the Liquidation Trust upon the Effective Date and shall no longer constitute property of the Debtor's Estate. Upon the funding of the $120,000 cash infusion from Seth Bernstein and the $75,000 initial Zebra payment, the Reorganized Debtor shall hold all its property and rights free and clear of all claims, interests, and encumbrances other than the Note and the Security Interest held by the Liquidating Trustee in all of the Reorganized Debtor's Assets.

   *F. Preservation of Rights of Action*

   1.   Vesting of Causes of Action.

      (a)   Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor holds or may hold shall vest upon the Effective Date in the Liquidation Trust.

      (b)   Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Debtor holds or may hold, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

      (c)   Causes of Action and recoveries therefrom shall remain the sole property of the Liquidation Trust, for the ratable benefit of the Beneficiaries of the Liquidation Trust, and holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery.

   2. Preservation of All Causes of Action Not Expressly Settled or Released.

      (a)   Unless a Cause of Action against a holder of a Claim or other entity is expressly waived, relinquished, released, compromised, or settled in the Plan and/or any Final Order (including the Confirmation Order), the Debtor and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtor or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtor maybe presently unaware, or which may arise or exist by

19

~~reason of additional facts or circumstances unknown to the Debtor~~
~~at this time, or facts or circumstances that may change or be~~
~~different from those the Debtor now believes to exist) and,~~
~~therefore, no preclusion doctrine, including, without limitation,~~
~~the~~or elsewhere, or of which the Debtor maybe
presently unaware, or which may arise or exist by
reason of additional facts or circumstances unknown to the Debtor
at this time, or facts or circumstances that may change or be
different from those the Debtor now believes to exist) and,
therefore, no preclusion doctrine, including, without limitation, the
doctrines of res judicata, collateral estoppel, issue preclusion,
claim preclusion, waiver, estoppel (judicial,
equitable, or                                                    otherwise) or laches
shall apply to such Causes of Action upon or
after the entry of the Confirmation Order or Effective Date based
on the ~~Disclosure Statement, Plan, or~~ Confirmation Order,
except                                     where such Causes of action
have been released- or otherwise
resolved by a Final Order
(including the Confirmation Order). In
addition, the Debtor and Liquidating Trustee
expressly reserve the                                          right to
pursue or adopt claims alleged in any lawsuit in which the
Debtor is a defendant or an interested
party against any ~~Entity,~~
entity, including, without limitation, the plaintiffs or co-
defendants in                                          such lawsuits.
The Liquidating Trustee believes he has substantial claims and
Causes of Action against Seth Bernstein and his related entities and
any other insiders of the Debtor. Seth Bernstein believes he has
substantial defenses.  All parties reserve all rights, claims and
defenses

(b)     Subject to the immediately preceding paragraph, any entity or
individual to which the Debtor has incurred an obligation (whether
on account of services, the purchase or sale of goods, or
otherwise), or that has transacted business with the Debtor, or that
has leased equipment or property from the Debtor, should assume
and is hereby advised that any such obligation, transfer, or
transaction maybe reviewed by the Liquidating Trustee subsequent
to the Effective Date and may be the subject of an action after the
Effective Date, regardless of whether (i) such ~~Entity has filed a~~
~~proof of claim against the Debtor in the Chapter 11 Case; (ii) the~~
~~Debtor or Liquidating Trustee has objected to any such Entity's~~
~~proof of claim; (iii) any such Entity's Claim was included in the~~
~~Schedules; (iv) the Debtor or Liquidating Trustee has objected to~~

20

Formatted: Indent: Left: 2"

~~any such Entity's scheduled Claim; (v) any such Entity's scheduled~~
~~Claim has been identified by the Debtor or Liquidating Trustee as~~
~~disputed, contingent, or unliquidated; or (vi) the Debtor has~~
~~identified any potential claim or Cause of Action against such~~
~~Entity herein or in the Disclosure Statement.~~ entity has filed a
proof of claim against the Debtor in the Debtor's chapter 11

case; (ii) the Debtor or Liquidating Trustee has objected to any
such entity's proof of claim; (iii) any such entity's Claim was
included in the Debtor's schedules of assets and liabilities; (iv) the
Debtor or Liquidating Trustee has objected to any such entity's
scheduled Claim; (v) any such entity's scheduled Claim has been
identified by the Debtor or Liquidating Trustee as disputed,
contingent, or unliquidated; or (vi) the Debtor has identified any
potential claim or Cause of Action against such entity herein.

## ARTICLE XI
## REQUEST FOR CONFIRMATION

*A. Request for Confirmation Pursuant to 1191(a).*

The Debtor believes that the Plan as proposed meets the requirements for confirmation under 1191(a) of the Bankruptcy Code and hereby requests confirmation of the Plan.

*B. Alternative Request for Confirmation Pursuant to 1191(b).*

In the event that the Court finds that the requirements for confirmation under § 1191(a) have not been met, the Debtor represents that the Plan as proposed meets the requirements for confirmation under §1191(b) of the Bankruptcy Code.

## ARTICLE XII
## FINANCIAL PROJECTIONS, PLAN FUNDING AND ANALYSIS

*A. Liquidation Analysis – Best Interest of Creditors*

Pursuant to §§ 1129(a)(7)(A)(ii) and 1190(1)(B), the Debtor has prepared a liquidation analysis which demonstrates that confirmation of this Plan is in the best interest of all creditors. The following chart asserts the amount, if any, of returns to creditors were this case converted to a liquidation under Chapter 7 of Title 11 of the United States Code:

| *Assets* | |
|---|---|

| Tangible Personal Property – Office Furniture | $47,012.76 |
|---|---|
| Intellectual Property – FAA Certificate | $0 (non-fungible) |
| **VALUE OF ASSETS AVAILABLE FOR DISTRIBUTION** | **$47,012.76** |
| | |
| *Liabilities and Obligations* | |
| Chapter 7 Administrative Expenses | ($1,000) |
| Plan Administrative Expenses – Professional Fees | ($50,000) |
| Priority Wage Claims – 507(a)(4) | ($28,010.36) |
| Priority Tax Claims – 507(a)(8) | ($~~1,026,532.49~~644,861.44) |
| **TOTAL LIABILITIES** | **(~~$1,105,542.85~~) $ $723,871.80** |
| | |
| LIQUIDATION PROCEEDS | ($~~1,058,530.09~~ $676,859.04) |
| | |
| **NET RETURN TO GENERAL UNSECURED CREDITORS** | **$0.00** |

*B. Feasibility*

Pursuant to § 1129(a)(11), the Debtor asserts the business of the ~~ci~~Debtor will not be liquidated, nor will there be a need for further financial reorganization.

*C. Income Projections, Plan Funding, Ability to Make Payments*

1. The Debtor currently has no disposable income. ~~The Plan Funder, ACH,~~Zebra has agreed to pay ~~the ACH Note payments and~~ $75,000 up front— with balance of the Purchase Price to be paid under the terms of the Note by the Reorganized Debtor. The Debtor is unable to project disposable income as ~~ACH~~Zebra will be operating the Debtor post-confirmation. The ~~ACH~~ Note, as it is described in the Plan, is the only foreseeable, disposable income at this point in the case. Upon information and belief, ~~ACH, the Plan Funder,~~Zebra will still need to add planes to the Part 135 Certificate, fund payroll and restart operations. Zebra has previously distributed its business plan to all interested parties. It is attached hereto as Exhibit "A". The Debtor avers the speculative and start-up nature of the business are more accurately reflected by the Note payments.

*D. Payment Defaults – Adequate Remedies*

Pursuant to § 1191(c)(3)(B), the Debtor proposes the following remedy should there by a default in payment:

~~Any creditor~~The Liquidating Trustee asserting a default in payments to be made under this Plan or the Note shall notify the Reorganized Debtor not less than three (3) days after the occurrence of such default. If, after ~~fourteen (14)~~ten (10) days following actual receipt by the

22

Reorganized Debtor of such notice, the Reorganized Debtor has not cured such default, then ~~upon noticethe~~ the Liquidating Trustee may exercise its rights under the Security Agreement and ~~an opportunity for hearing. the Debtor will request that~~institute such other actions he deems necessary or desirable in the Court ~~hold a status conference~~ to ~~discuss the possibility~~enforce his rights under the Note and Security Agreement. A copy of ~~conversion, dismissal, or removal of the debtor in possession.~~ the Security Agreement is annexed to the Plan as Exhibit "D."

## ARTICLE XIII
## MODIFICATION, AMENDMENT, WITHDRAWAL

Only the Debtor may alter, amend, or modify the Plan before or after the Confirmation Date, as provided in § 1193 of the Bankruptcy Code.

*A. Effect of Confirmation on Modification.*

Confirmation of the Plan shall mean that all modifications or amendments to the Plan ~~thereafter~~prior to Confirmation are effective without the need for additional approval or disclosure.

*B. Debtor's Right to Revoke or Withdraw Plan.*

The Debtor reserves the right to revoke or withdraw the Plan prior to Confirmation.

## ARTICLE XIV
## PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as provided in this Plan or the Order confirming this Plan, all of the ~~property~~Causes of Action of the ~~estate~~Estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, ~~vests~~vest in the Liquidating Trustee as of the Effective Date, free and clear of any claim or interest of any creditor provided for by this Plan.

## ARTICLE XV
## CONFIRMED PLAN BINDING ON DEBTOR AND CREDITORS

23

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon ~~confirmation~~Confirmation, bind the Debtor, each and every ~~creditor~~Creditor of this ~~estate~~Estate and each party in interest, whether or not the ~~claim~~Claim of such creditor or party is provided for by the Plan and whether or not such ~~creditor~~Creditor or party has accepted or has rejected the Plan.

The Liquidating Trustee, together with his consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the ~~Holders~~holders of Claims or ~~Equity Interests~~equity interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Trustee and the Estate shall, to the fullest extent permitted by the laws of the State of New York, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidation Trust and the Estate. To the extent the Liquidation Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

## ARTICLE XVI
## DISCHARGE

~~The Debtor shall become eligible for a discharge under § 1141(d) of the Bankruptcy Code upon confirmation of a plan confirmed pursuant to § 1191(a). Alternatively, if the Debtor's plan of reorganization~~If the Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code, then upon the final payment and application to the Court by the Debtor, the Debtor shall be eligible to receive a discharge under 1192 of the Bankruptcy Code.

24

## ARTICLE XVII
## GOOD FAITH

The Debtor has proposed this Plan in good faith and not by any means forbidden by law. The Plan complies with all applicable provisions of the Bankruptcy Code, as well as the Plan proponent, the Debtor, in proposing this Plan.

## ARTICLE XVIII
## MISCELLANEOUS

A. *Definitions and Rules of Construction*. The definitions and rules of construction set forth in 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

B. *Effective Date of Plan*. The ~~effective date~~Effective Date of the Plan shall be the date upon which the ~~first bi-annual dividend is due to be disbursed~~Confirmation Order becomes a Final Order.

C. *Severability*. If any provision of this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision in the Plan.

~~D. *Appendices*. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.~~

~~E.~~D.     *Captions*. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

~~F.~~E.     *Controlling Effect*. Unless a rule of law or procedure is supplied by federal law, the laws of New York State govern any controversies arising under this Plan and any and all agreements, documents, and instruments executed in connection with this Plan, except as explicitly provided in this Plan.

~~G.~~F.     *Role of the Subchapter V Trustee Following Confirmation*

1. Because the Plan proposes to pay creditors directly, the Subchapter V ~~trustee's~~Trustee's services with regard to payment or retention of payments to be disbursed are not necessary.

2. The Plan does not propose to commit any future earnings of the Debtor to generate a return for creditors because creditors will be paid from sources other than the business operations of the Debtor. Therefore, § 1190(2) of the Bankruptcy Code is inapplicable.

3. Pursuant to § 1183(c)(1), upon notice to the Court of substantial consummation of the confirmed Plan, the Subchapter V trustee'sTrustee's services shall terminate immediately.

H. ~~Payment Trust Account. Each monthly payment made by the Debtor to fund the bi-annual dividend shall be deposited in an FDIC insured creditor trust account that complies with all applicable laws, rules and regulations that may apply to such accounts.~~

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claimsClaims related thereto; to determine disputes as to classification or allowance of claimsClaims or interests; to interpret the Plan or the Liquidation Trust Agreement; to hear and determine all objections to Claims, proceedings to estimate a Claim or actions to equitably subordinate a Claim; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding.; to determine other such matters as may be set forth in a confirmationConfirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in thisthe Plan or confirmation order.; and to take any action or make any ruling as may be necessary to carry out the purpose and intent of thisthe Plan.

With specific regard to the Liquidation Trust and the LiquidationLiquidating Trustee, the Court shall retain jurisdiction of this Chapterchapter 11 case to:

(1) Administer the Plan and the Liquidation Trust and hear and determine any matters regarding the Liquidation Trust Agreement or affecting the administration of the Liquidation Trust or the Liquidation Trust Assets;

(2) To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; provided, however, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

(3) To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date; and

(4) To close the ChapterDebtor's chapter 11 Casecase when administration of the Liquidation Trust and the Chapterchapter 11 Casecase have been completed.

26

Respectfully submitted,

CIARDI CIARDI & ASTIN

*/s/ Albert A. Ciardi, III*
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551

Counsel for the Debtor

And

**All In Jets, LLC d/b/a JetReady**

_____
Seth Bernstein, Member

Dated: ~~August 18~~September 29, 2021

